Cedric WALKER *v.* COOPER STANDARD AUTOMOTIVE, Crockett Adjustment, and St. Paul Travelers Insurance Co.

CA 08-519                                           289 S.W.3d 184

Court of Appeals of Arkansas
Opinion delivered December 17, 2008

*Moore & Giles, LLP*, by: *Greg Giles*, for appellant.

*Bridges, Young, Matthews & Drake, PLC*, by: *Michael J. Dennis*, for appellee.

JOHN B. ROBBINS, Judge. Appellant Cedric Walker appeals the denial of temporary total disability (TTD) or temporary partial disability (TPD) benefits by the Workers' Compensation Commission in his claim against appellee Cooper Standard Automotive. Appellant asserts on appeal that while he continued to work light-duty after his compensable left knee injury, he was ultimately terminated due to a reduction in workforce, rendering him eligible for TTD or TPD while he remained in his healing period. Appellee employer resisted the claim in its entirety, and it cross-appeals the finding that the knee injury is compensable, arguing that any medical treatment required after he left employment was the result of a later independent intervening event. Thus, both employee and employer argue that the Commission's decision lacks substantial evidence to support it on their respective points.

We affirm on cross appeal, holding that substantial evidence supports the Commission's finding that appellant suffered a compensable knee injury on April 27, 2006, that included a medial meniscus tear. On direct appeal, we reverse and remand because appellant was not statutorily barred from receiving TTD or TPD.

This court reviews decisions of the Workers' Compensation Commission to determine whether there is substantial evidence to support it. *Rice v. Georgia-Pacific Corp.*, 72 Ark. App. 149, 35 S.W.3d 328 (2000). Substantial evidence is that relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001). We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if its findings are supported by substantial evidence. *Geo Specialty Chem. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). The issue is not whether we might have reached a different decision or whether the evidence would have supported a contrary finding; instead, we affirm if reasonable minds could have reached the conclusion rendered by the Commission. *Sharp County Sheriff's Dep't v. Ozark Acres Improvement Dist.*, 75 Ark. App. 250, 57 S.W.3d 764 (2001); *Foxx v. American Transp.*, 54 Ark. App. 115, 924 S.W.2d 814 (1996). It is

the Commission's province to weigh the evidence and determine what is most credible. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999).

In workers' compensation cases, the Commission functions as the trier of fact. *Blevins v. Safeway Stores*, 25 Ark. App. 297, 757 S.W.2d 569 (1988). The credibility of witnesses and any conflict and inconsistency in the evidence is for the Commission to resolve. *Warwick Electronics, Inc. v. Devazier*, 253 Ark. 1100, 490 S.W.2d 792 (1973). A majority of the Commission is required to reach a decision. *See* Ark. Code Ann. § 11-9-204(b)(1) (Repl. 1996); *see also S & S Constr., Inc. v. Coplin*, 65 Ark. App. 251, 986 S.W.2d 132 (1999). Two-to-one decisions are frequently issued by the Commission, and those are majority decisions. *S & S Constr., Inc. v. Coplin, supra.* Here, all three Commissioners agreed to affirm and adopt the ALJ's finding of compensability of the knee injury and reasonably related medical expenses. Two of the three Commissioners agreed to affirm and adopt the ALJ's finding of appellant being barred from TTD or TPD because of refusal of suitable employment.

To perform the proper review on appeal, we must examine the basis for the Commission's findings. Appellant, a man in his forties, had worked for Cooper Standard Automotive since 1997. Appellant was in a light-duty position[1] in the storeroom when he hurt his knee walking up stairs on April 27, 2006, in the middle of his shift. Appellant lost his balance, his weight shifted, and in an effort to protect his post-surgical right knee, he hurt his left knee. Appellant stated that although he finished his shift, his knee immediately began to hurt and swell. The next day, his knee was swollen so badly he could hardly walk. Appellant filed an incident report and was sent to the company doctor, who performed an x-ray and prescribed ice packs and anti-inflammatory medication. The nurse noted visible swelling upon physical exam. After that incident, his knee continued to bother him, but he continued in his light-duty job at work.

Appellant signed a severance agreement at the end of June 2006, because the plant was reducing its workforce and was

---

[1] Appellant had been on light duty intermittently for years with this employer as an accommodation for other work-based injuries. Those injuries were in 2000 to his shoulder, in 2001 to his right knee, in 2002 or 2003 to his hands (carpal tunnel syndrome), and in 2004 to his shoulder.

heading for closure. Appellant added that he probably could not continue to work as he had been doing because his knee was continuing to hurt. Appellant testified that he felt he had no alternative but to sign the severance form and take the severance money ($3,541.19) in order to pay for medical care, which was being declined by the workers' compensation carrier. The pre-printed form, signed by appellant, the employer's human resources manager, and the union representative, stated that appellant understood that he was "being terminated from employment at Cooper-Standard Automotive effective 7-5-06 due to reduction in workforce in accordance with the plant closure agreement." It acknowledged that he was being "terminated due to my seniority or that I have chosen to be voluntarily terminated." The form ensured that appellant had read "the El Dorado Plant closing termination agreement."

Appellant presented to an emergency room on August 2, 2006, wherein the report was that appellant had twisted his left knee while getting out of the bathtub, causing worsening pain that night. Appellant recalled going to the emergency room that night, but he denied any new injury, testifying that his knee was hurting before that night. Appellant challenged the accuracy of any written note saying he hurt his knee a couple days before August 2, 2006.

Appellant presented to another physician in late 2006, and appellant was prescribed a knee brace. Appellant said it helped but that he knew something was still very wrong with his left knee because it hurt all the time. An MRI performed in January 2007 demonstrated the existence of a medial meniscus tear, for which surgical repair was suggested. Appellant said he wanted the surgery but could not pay for it.

Appellee argued that the cause for the need for extensive medical treatment including surgery was just as likely the bathtub event in August, not the April work event. Appellee asserted that appellant failed to prove a compensable surgical injury. Appellee also argued that appellant's voluntary resignation barred any claim for TTD or TPD.

The ALJ found appellant's testimony credible as to the onset and severity of injury. The ALJ rejected appellee's theory as to the alleged later injury. The ALJ found that appellant suffered a compensable knee injury on April 27 and that all the medical treatment including surgical repair was reasonably necessary and causally related to the work injury. As to the request for temporary

disability, the ALJ found that appellant was barred because he took a voluntary severance with no knowledge of how long the plant would remain open. Thus, finding that appellant refused suitable employment offered to or procured for him in accordance with Ark. Code Ann. § 11-9-526. The ALJ did not find appellant's contention, that he would not have been physically able to continue to work light duty much longer anyway, to be persuasive where there was no physician's recommendation to cease light duty. Both parties appealed to the Commission.

After performing its de novo review, the Commission, by a unanimous vote, found that appellant had proven by a preponderance that he suffered a specific incident left knee injury at work on April 27, 2006, while walking up stairs and that all medical treatment was reasonably necessary in connection with that compensable injury. The majority of Commissioners also found that appellant had not proven by a preponderance of the evidence that he was entitled to any temporary disability benefits, total or partial, because he had voluntarily accepted a severance package after his work-related injury. The dissenting Commissioner asserted that he would have found that the employer did not offer suitable work available for its injured employee. Appellant filed a notice of appeal, and appellee filed a notice of cross-appeal.

First, we address the cross-appeal, challenging the substantiality of evidence to support that appellant's knee injury occurring in April 2006 caused the extensive tear. Appellee concedes that there might have been a minor injury causing swelling in April 2006, but that the eventual finding of a medial meniscus tear was just as likely caused by an incident on or about August 2, 2006, as noted in contemporaneous emergency room reports.

■ The Commission affirmed and adopted the ALJ opinion, in which this precise argument was raised and rejected. The ALJ determined that appellant had proven that he had not suffered left knee problems before the event described in April 2006, that there was evidence of swelling noted by the company doctor, and that the credible testimony was that appellant suffered knee problems ever since that event. This was a matter of weighing the evidence and fact finding, a function left to the Commission and not our court on appeal. *Minn. Mining & Mfg. v. Baker, supra.* Based upon the standard of review, we hold that substantial evidence exists to support compensability of this knee injury, to include the tear that requires surgical repair.

Moving to the direct appeal, appellant challenges the ALJ's (and the Commission's) finding that he was barred from receiving TTD or TPD because, even though he remained in his healing period and continued to work in his light-duty job, he voluntarily removed himself from the workplace.

Arkansas Code Annotated section 11-9-521 states that a claimant with a scheduled injury is entitled to temporary total disability benefits "during the healing period or until the employee returns to work, whichever occurs first." Appellant undisputedly remained in his healing period and continued to work.[2] Thereafter, pursuant to Ark. Code Ann. § 11-9-526, he was not entitled to any TTD or TPD if he "refused employment suitable to his or her capacity offered to or procured for him . . . during the continuance of the refusal, unless . . . the refusal is justifiable."

██ We hold that there is no substantial evidence of unjustifiable refusal to work light duty offered to or provided for appellant. Appellant was terminated at the urging of his employer. *Compare Superior Indus. v. Thomaston*, 72 Ark. App. 7, 32 S.W.3d 52 (2000). Construing the relevant statute strictly, as we must, the facts remain that this employee was neither offered employment, nor did he refuse employment, at any time after July 5, 2006. As we held in *Barnette v. Allen Canning Co.*, 49 Ark. App. 61, 896 S.W.2d 444 (1995), where an employee suited to light duty is not offered a suitable job by the employer, section 11-9-526 is not triggered. Contrary to the dissenting judge's opinion, we are not holding that Walker was unable to continue light-duty work. We uphold that finding as supported by substantial evidence. We hold only that appellant could not have refused employment where it was no longer offered by his employer. For the foregoing reasons, we reverse and remand on appellant's direct appeal because the Commission's decision is not supported by substantial evidence.

Reversed and remanded on direct appeal. Affirmed on cross-appeal.

HART, GLOVER, and GRIFFEN, JJ., agree.

PITTMAN, C.J., and HEFFLEY, J., dissent.

---

[2] Although the ALJ's opinion, adopted by the Commission, recites no less than three times that appellant continued to work over five months after his compensable injury, it is undisputed that only two months elapsed between the injury and when appellant accepted the severance package.

SARAH J. HEFFLEY, Judge, dissenting. Though I might have reached a different result from that reached by the Commission in awarding Walker further medical benefits including surgery, I recognize the standard of review. Applying that standard, I join in the portion of the majority opinion affirming that award. However, applying the same standard to the Commission's denial of TTD following Walker's voluntary termination, I must respectfully dissent from the portion of the majority opinion reversing on that point.

When reviewing a decision of the Commission, the issue is not whether we might have reached a different result from the Commission, but rather whether reasonable minds could have reached the result found by the Commission. *Superior Industries v. Thomaston*, 72 Ark. App. 7, 9, 32 S.W.3d 52, 53 (2000). Reasonable minds could conclude, as did the Commission, that Walker was not physically unable to perform light-duty work and that he refused suitable employment at Cooper Tire and was, therefore, disqualified from receiving TTD.

As recognized by the Commission, Walker returned to his normal, light-duty work at the tire plant immediately after his injury; he did not stop working until June 30, 2006, having signed a *voluntary* termination agreement on June 28. Moreover, as noted by the Commission, no physician ever recommended that Walker cease his light-duty position. The majority implies that Walker was forced to sign the termination agreement due to the Cooper Tire plant closure. However, as recognized by the Commission, the record reveals no firm evidence that Cooper Tire's closure was imminent. At the time Walker was *offered* the termination agreement — implying that he had a choice — there were layoffs occurring at the plant. But Walker does not assert that he was laid off or that he had been notified of a certain job loss. Instead he testified that he "agreed to take the voluntary termination because, man, it wasn't no way that I could keep working on my knee the way it was. They offered me that severance package and I decided to take the little money that they was giving me. My number was coming anyway so I got the money to get me some medical attention." There was no ambiguity about whether Walker voluntarily chose to leave his work at Cooper rather than seek other job duties to accommodate his knee pain. Any potential ambiguity was clarified by Walker's own testimony.

This case is unlike *Superior Industries*, cited by the majority, where Thomaston was *involuntarily* terminated for misconduct. 72 Ark. App. 7, 32 S.W.3d 52 (2000). The court there stated that

"Mr. Thomaston did not refuse employment; he accepted the employment and was later terminated *not by his choice,* but at the option of his employer." 72 Ark. App. at 11, 32 S.W.3d at 54 (emphasis added). Here, regardless of whether Walker's knee pain played a role in his decision, he admits that the termination *was by his choice.* Walker could have rejected Cooper Tire's offer of a voluntary termination package and sought a lighter or different work duty from Cooper Tire. Indeed, Cooper Tire had a statutory duty to provide him with suitable work. Ark. Code Ann. § 11-9-526. But because Walker continued to work, Cooper had no need to make such an offer. Walker accepted a termination agreement and voluntarily gave up his job. His refusal to continue working disqualified him from benefits.[1] This case is also distinguishable from *Barnette v. Allen Canning Co.,* cited by the majority. 49 Ark. App. 61, 896 S.W.2d 444 (1995). There, Barnette was unable to work in any capacity at the canning company and the employer failed to offer her suitable work. Our case is different because at no time before he signed the voluntary termination agreement did Walker become unable to perform his normal light-duty work.

A reasonable person, considering Walker's continuing to work, the medical records, the language of the agreement, and Walker's testimony, could have found that he refused the work at Cooper Tire, not due to his knee pain, but because he was offered a voluntary termination package. Walker would not receive TTD benefits if he had taken an early retirement instead of seeking suitable work at Cooper Tire. I see the same logic at work here. By reversing this case, the majority eschews the standard of review, and gives Walker a double-reward: a voluntary termination package plus TTD benefits even though he refused to work at Cooper Tire.

---

[1] Ark. Code Ann. § 11-9-526 states that "[if] any injured employee refuses employment suitable to his capacity offered to or procured for him, he shall not be entitled to any compensation during the continuance of the refusal, unless ... the refusal is justified."