2010 Ark. App. 714

**BIO–TECH PHARMACAL, INC., Appellant**

v.

**Edmond BLOUIN, Appellee.**

**No. CA 09–1202.**

Court of Appeals of Arkansas.

Oct. 27, 2010.

Rehearing Denied Dec. 1, 2010.

---

Robert Steven Tschiemer, Mayflower, Timothy C. Hutchinson, Rogers, for appellant.

Conrad Thomas Odom, Odom Law Firm, Fayetteville, Timothy James Cullen, Cullen & Company, PLLC, Little Rock, for appellee.

RAYMOND R. ABRAMSON, Judge.

Edmond Blouin worked for Bio–Tech Pharmacal, Inc. for about five years in various capacities. During his tenure at Bio–Tech, Blouin suffered a work-related injury in early November 2004. Blouin was underneath his desk trying to dismantle it so that he could move it to his new office, when the two pieces of his desk and a bookshelf sitting on top of the desk collapsed on top of him. As a result of the accident, Blouin had pain in his back, legs, neck, and knees. He received treatment for his injuries from several sources.

AIG, Bio–Tech's purported workers' compensation insurer, initially accepted the injury as compensable and paid benefits to Blouin. The Administrative Law Judge held a prehearing conference in June 2007 to which Blouin, Bio–Tech, and AIG were parties. At the hearing, AIG contended that it was not responsible for any additional compensation benefits because Bio–Tech's insurance had been cancelled before Blouin's injury. The resulting prehearing order stated that the parties had stipulated that Blouin sustained a compensable injury. The ALJ held a hearing on the coverage issue in December 2007 and entered an order in January 2008 finding that AIG had proper-

ly cancelled Bio–Tech's insurance and that Bio–Tech was therefore liable for Blouin's injuries. This order also repeated the earlier stipulation about compensability and further stated that the prehearing stipulations contained in the June 2007 order were accepted as fact.

At the October 2008 hearing, the parties, by agreement, litigated two issues: 1) Blouin's entitlement to permanent-partial-disability benefits, including wage-loss-disability benefits; and 2) Blouin's entitlement to attorney's fees. The ALJ subsequently filed an opinion awarding Blouin permanent-partial-disability benefits in the amount of 10% to the body as a whole—7% permanent-impairment rating and 3% wage-loss. Blouin appealed and Bio–Tech cross-appealed to the Commission. The Commission, however, affirmed and adopted the ALJ's decision. The Commission also addressed, in its August 2009 opinion and order, Bio–Tech's argument that a certain provision of the Workers' Compensation Act violated Bio–Tech's Seventh Amendment right to a jury trial. The Commission found Bio–Tech's constitutional argument unpersuasive. Bio–Tech appeals and Blouin cross-appeals.

### Standard of Review

■ In deciding whether substantial evidence supports the Commission's decision, this Court views the evidence (and the inferences deducible therefrom) in the light most favorable to the Commission's findings. *Walker v. Cooper Auto.*, 104 Ark.App. 175, 176, 289 S.W.3d ₃184, 186 (2008). We affirm if reasonable minds could reach the Commission's conclusion, always remembering that weighing the evidence and making credibility determinations are within the Commission's province, not ours. *Walker*, 104 Ark.App. at 176–77, 289 S.W.3d at 186. When the Commission, as it did here, affirms and

adopts the ALJ's opinion, we consider both the ALJ's decision and the Commission's majority opinion. *Fayetteville Sch. Dist. v. Kunzelman*, 93 Ark.App. 160, 162, 217 S.W.3d 149, 151 (2005). We review questions of law, however, *de novo*. *Nestle, USA, Inc. v. Drone*, 2009 Ark. App. 311, at 3, 307 S.W.3d 54, 56.

### Constitutional Challenges

■ In its appeal to the Commission, Bio–Tech argued that Arkansas Code Annotated section 11–9–105(b)(1) violates its right to a jury trial under the Seventh Amendment to the United States Constitution. This code section reads as follows:

> [I]f an employer fails to secure the payment of compensation as required by this chapter, an injured employee, or his or her legal representative in case death results from the injury, may, at his option, elect to claim compensation under this chapter or to maintain a legal action in court for damages on account of the injury or death.

Ark.Code Ann. § 11–9–105(b)(1) (Repl. 2002). The Commission, however, found Bio–Tech's Seventh Amendment argument without merit.

■ On appeal, Bio–Tech has expanded its constitutional argument to include challenges under the Fifth and Fourteenth Amendments to the United States Constitution. These arguments, under the Due Process and Equal Protection Clauses, are not preserved for our ₄review because Bio–Tech did not make them before the Commission. "Even arguments of constitutional dimension must be argued below if they are to be preserved for appeal." *Finley v. Farm Cat, Inc.*, 103 Ark.App. 292, 297, 288 S.W.3d 685, 690 (2008).

■ The only constitutional argument Bio–Tech made to the Commission, and upon which the Commission ruled, was

that Arkansas Code Annotated section 11–9–105(b)(1) violates its Seventh Amendment right to a jury trial. This argument is thus ripe for our review, but is easily decided. "[T]he 7th Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts, or the standards which must be applied concerning the same." *Minneapolis & St. Louis R.R. Co. v. Bombolis,* 241 U.S. 211, 217, 36 S.Ct. 595, 60 L.Ed. 961 (1916); *see also Colclasure v. Kansas City Life Ins. Co.,* 290 Ark. 585, 588, 720 S.W.2d 916, 918 (1986). Because the Seventh Amendment to the United States Constitution does not apply to the states, we affirm the Commission's holding that Bio–Tech's Seventh Amendment challenge has no merit.

■ To be sure, article 2, section 7 of the Arkansas Constitution secures Arkansans' right to a jury trial in civil cases. Bio–Tech, however, did not make any argument to the Commission under this provision of the Arkansas Constitution. It instead based its argument exclusively on the Seventh Amendment to the United States Constitution. To the extent that Bio–Tech argues on appeal that code section 11–9–105(b)(1) violates its right to a jury trial under the Arkansas Constitution, the argument is again not preserved because Bio–Tech did not make it before the Commission. *Finley,* 103 Ark.App. at 297, 288 S.W.3d at 690.

### Compensability

■ As noted above, the ALJ entered a pre-hearing order in June 2007, stating that the parties stipulated that "[t] he claimant sustained a compensable injury in June 2004." The ALJ's January 2008 opinion, finding that Bio–Tech's workers' compensation coverage had lapsed at the time of Blouin's injury, listed the same stipulation and said that the compensability stipulation (among others) contained in the prehearing order was "hereby accepted as fact."

At a hearing before the ALJ in October 2008, the ALJ mentioned the compensability stipulation and asked the parties if there were any changes that needed to be made to the prehearing order. The following colloquy occurred:

[BIO-TECH'S ATTORNEY]: You—the only—the only issue that's—the Court has found in their prior orders they have been using as the date of injury, I believe, a June 2004 date, which is our contention is inconsistent with the medical records, and I believe the testimony may—may amend or change whatever that date is, so as opposed to us stipulating that—I mean, since I wasn't in the record. I don't I don't know how it ended up getting stipulated initially, but I think just for clarification of the record that that date is not stipulated as to the date of injury.

JUDGE STEWART: Okay.

[BLOUIN'S ATTORNEY]: But—but we do stipulate that during the course of his employment at Bio Tech, that there was an incident involving a desk, which was reported as an injury that a claim was opened up on and that benefits had been paid out on by AIG when they were still a party to this.

JUDGE STEWART: For whatever date it was.

[BLOUIN'S ATTORNEY]: For whatever—

[BIO-TECH'S ATTORNEY]: And I think it's probably more consistently like November the 1st, somewhere in that area.

JUDGE STEWART: Okay. All right. With that, the Pre-hearing Order will be

admitted as Commission Exhibit No. 1.

Thus, the only issues litigated at the October 2008 hearing were Blouin's entitlement to permanent-partial-disability benefits, including wage-loss-disability benefits, and attorney's fees. The ALJ's resulting October 2008 opinion again noted that its January 2008 opinion, which contained the compensability stipulation, was final.

In its appeal to the Commission, Bio–Tech challenged compensability. But the Commission held that the ALJ's June 2007 prehearing order was *res judicata*. The Commission further found, quoting the same colloquy above, that Bio–Tech had never withdrawn its earlier stipulation. It stated that Bio–Tech's lawyer's comments did not "rise to the level of withdrawing the stipulation." We agree with the Commission's conclusion: Bio–Tech stipulated that Blouin's injury (whenever it occurred) was compensable, did not withdraw the stipulation, and agreed to litigate only the issues of Blouin's entitlement to permanent-partial-disability benefits, including wage-loss-disability benefits, and attorney's fees. Compensability is therefore a closed issue.

### *Permanent–Partial–Disability Benefits*

"Permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment." Ark.Code Ann. § 11–9–102(4)(F)(ii)*(a)* (Supp.2009). In order to receive wage-loss-disability benefits in excess of his permanent-physical impairment, Blouin first had to prove, by a preponderance of the evidence, that he sustained permanent-physical impairment as a result of a compensable injury. *Taggart v. Mid Am. Packaging*, 2009 Ark. App. 335, at 4, 308 S.W.3d 643, 646. "The wage-loss factor is

the extent to which a compensable injury has affected the claimant's ability to earn a livelihood." *Taggart*, 2009 Ark. App. 335, at 5, 308 S.W.3d at 647. "In considering claims for permanent partial disability benefits in excess of the employee's percentage of permanent physical impairment, the Workers' Compensation Commission may take into account, in addition to the percentage of permanent physical impairment, such factors as the employee's age, education, work experience, and other matters reasonably expected to affect his or her future earning capacity." Ark.Code Ann. § 11–9–522(b)(1) (Repl.2002). There are other matters to be considered as well: motivation, post injury income, credibility, and demeanor, among other factors. *Taggart*, 2009 Ark. App. 335, at 5, 308 S.W.3d at 647.

In assigning Blouin a 7% permanent-impairment rating, the ALJ considered Blouin's testimony and medical history, including his previous back-pain complaints, which predated his employment with Bio–Tech. The ALJ, however, relied most heavily on Dr. Cathey's opinion. In a February 2006 letter, Dr. Cathey, a neurosurgeon, stated that he believed that "it is reasonable to assume that the disc herniation at T12–L1 resulted from the occupational injury Mr. Blouin sustained in September 2004." Dr. Cathey found, in the same letter, that Blouin is "entitled to a 7% permanent partial impairment rating to the whole person." In sum, substantial evidence supports the ALJ's conclusion that Blouin is entitled to a 7% permanent-partial-impairment rating. *Averitt Express, Inc. v. Gilley*, 104 Ark.App. 16, 17–19, 289 S.W.3d 118, 120–21 (2008).

The ALJ, in analyzing the wage-loss question, considered a variety of factors. The ALJ noted that Blouin was fifty-nine years old, received a bachelor's

degree in history and fine arts and a doctorate in crypto technology, and had worked as a freelance artist for some time after college in New Orleans. Blouin testified that his income as an artist was right around the poverty line or slightly above it. Blouin also said that he had worked as a business manager for a landscape-architecture firm about twenty years earlier. Before working at Bio–Tech, Blouin had stayed home for about seven years raising his son. At the time of the hearing, Blouin had been working for Bio–Tech for about five years. Blouin returned to his job at Bio–Tech for a while after his injury, but was later placed on administrative suspension without pay.

Since leaving Bio–Tech, Blouin had worked part-time at the Department of Health and Human Services earning $10.00 per hour, part-time at another governmental agency earning minimum wage, and as a substitute teacher earning $70.00 per day. Blouin testified about how his back problems had interfered with his ability to perform his work at these jobs in various ways. Blouin said that, since his injury, the most he had worked was one to two weeks at a time.

The ALJ also weighed Dr. Cathey's opinion in the balance. In his February 2006 letter, Dr. Cathey found that Blouin had reached maximum medical improvement and wrote, "I believe the patient should be encouraged to resume the activities of daily living without restrictions. I have also encouraged him to resume jogging, working out, bicycling, etc. Although these activities might lead to an increase in his current symptomatology, there is certainly no medical contraindication to the performance of these tasks." Taking all of these factors into consideration, the ALJ awarded Blouin 3% wage-loss disability.

Both Bio–Tech and Blouin challenge the wage-loss award. Blouin, of course, argues that the award should have been greater. He claims that the ALJ should have given more consideration to his wage-earning history and to his current job prospects, especially in light of his continuing back pain. Blouin advocates for an increase to 50% wage-loss disability. Bio–Tech, on the other hand, points to Blouin's lack of motivation and argues that Blouin's low-wage-earning work history is the product of his desire to work as an artist, not his inability to obtain higher-paying and/or full-time work. Both Blouin's and Bio–Tech's challenges, however, are unavailing. Because reasonable minds could reach the Commission's conclusion, substantial evidence supports its 3% wage-loss-disability award. *Walker*, 104 Ark.App. at 176–77, 289 S.W.3d at 186.

Affirmed on direct appeal; affirmed on cross-appeal.

HENRY and BROWN, JJ., agree.