Sherry ROARK *v.*
POCAHONTAS NURSING & REHABILITATION

CA 05-1226                                      235 S.W.3d 527

Court of Appeals of Arkansas
Opinion delivered May 10, 2006

M. *Keith Wren*, for appellant.

*Huckabay, Munson, Rowlett & Moore, P.A.*, by: *Carol Lockard Worley* and *Jarrod S. Parrish*, for appellees.

DAVID M. GLOVER, Judge. Sherry Roark appeals the Commission's affirmance and adoption of the Administrative Law Judge's determination that she had failed to prove that she remained totally disabled after May 14, 2004, and that the provisions

of Arkansas Code Annotated section 11-9-505(a)(1) were not applicable in her case. She raises four arguments on appeal:

> I. Claimant is entitled to benefits pursuant to Ark. Code Ann. § 11-9-505 because the decisions of the Missouri Employment Security Division are not binding upon the Arkansas Workers' Compensation Commission.
>
> II. Merely allowing the claimant to return to work briefly before terminating her does not relieve the employer from its obligations pursuant to Ark. Code Ann. § 11-9-505.
>
> III. The undisputed evidence reveals that claimant was not terminated for good cause.
>
> IV. In the alternative, the claimant is entitled to temporary total disability benefits.

We affirm the Commission's decision.

Our standard of review in workers' compensation cases was set forth in *Arbaugh v. AG Processing, Inc.*, 360 Ark. 491, 493-94, 202 S.W.3d 519, 521 (2005) (citations omitted):

> On appeal, this court views the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's decision and affirm that decision when it is supported by substantial evidence. It is for the Commission to determine where the preponderance of the evidence lies; upon appellate review, we consider the evidence in the light most favorable to the Commission's decision and uphold that decision if it is supported by substantial evidence. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. There may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we had sat as the trier of fact or heard the case de novo. It is exclusively within the province of the Commission to determine the credibility and the weight to be accorded to each witness's testimony. We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission.

In the present case, Roark began working for appellee Pocahontas Nursing and Rehabilitation on March 29, 2004, as a certified nursing assistant. It is undisputed that she suffered a

compensable injury on April 9, 2004. Roark was off work until April 28, when she returned to light-duty work.

At the hearing, Roark testified that prior to her injury, she worked in the nursing department and was supervised by Aneica Ball, who was responsible for making out the CNA schedules. Roark said that Ball gave her two schedules, one for April, which she received prior to her injury, and another schedule for May, which she received after she returned to work. Prior to her injury, Roark asked Ball to be off work May 14-15 for a family wedding. Roark said that when she returned to light duty, the schedule she received reflected that she was not scheduled to work on the days that she had asked to be off, and that there was a notation of "RO" by those dates, which meant that she had specifically "requested off" on those days. Roark testified that her regular shift was 3 p.m. to 11 p.m., but that when she returned to work on light duty, she worked from 7 a.m. to 3 p.m. Roark said that when she returned for light-duty work, she reported to Ball, and that she was never told to report to Pam Murphy, the administrator of the center. Roark also testified that she also was never told by Murphy or anyone else that her new light-duty schedule did not include the days off that she had previously requested.

Roark did not go to work on May 10 because she had car trouble; she said she called in, but she did not recall with whom she spoke. She said that she tried to contact Murphy twice on May 10 but was unable to reach her. Roark said that she went to work on May 11 and reported to the charge nurse, but she did not recall seeing Murphy that day. She went to work on May 12 but not on May 13 because she had to take her son to Little Rock for a medical appointment. Roark said that she called in on the night of May 12 but again did not recall with whom she spoke. She did not go to work on May 14 because she had earlier requested that day off; when she returned to work on May 17, she was advised that she was being terminated because she was a no call/no show on May 14.

Roark testified that she was never given a new work schedule after returning to light-duty work and that Murphy never verbally or otherwise gave her another schedule. Roark said that she never discussed taking May 14-15 off with Murphy, and that Murphy never told her that she could not take those days off. Roark said that since May 17 she has been ready, willing, and able to return to light-duty work.

On cross-examination, Roark said that she had filed for unemployment in Missouri, where she lived, but that it was denied. She said that at the time of her injury, she was still in her probationary period and that her regular shift was 3 p.m. to 11 p.m. Roark admitted that when she began light-duty work her schedule switched to 8 a.m. to 4 p.m. but that she was still going by her April schedule that showed her shift as being from 3 p.m. to 11 p.m. She said that she thought the April schedule did not show her light-duty hours because it was too close to the end of the month to change it, and that the second schedule (May) was prepared before she returned to light-duty work.

Roark acknowledged that there was a rule that required employees to call into work at least two hours beforehand if they were going to be absent, and that this rule was contained in the attendance policy, which she had signed. She also acknowledged that the attendance policy had a zero tolerance for a no call/no show, and that an employee could be terminated for the first instance of a no call/no show.

Roark said that the May schedule she had reflected that she had requested off May 14–15, but that she did not confirm that she would be off those days with Murphy when she began light-duty work because she had confirmed it with Ball. She said that Ball never told her that she had to discuss her request for days off with Murphy after she returned to light-duty work. Roark said that after she was terminated that she did not speak to Ball or Murphy about the situation.

Pam Murphy, the administrator of Pocahontas Nursing and Rehabilitation, testified that Aneica Ball was the director of nursing at the center, and that she prepared schedules on the 20th or 25th of the month preceding the month of the schedule so that the center could ensure that there would be enough CNAs for each shift to comply with the law. Murphy said that the schedules were always a "work in progress" because they changed as employees called in sick or requested days off. Murphy said that copies of the schedules were not handed out, but that employees were allowed to make copies of them.

Murphy said that when an employee suffers a work-related injury and must perform light-duty work, he or she comes under her direct supervision and is assigned to the day shift, which is 8 a.m. to 4 p.m., and that duties are assigned based upon the employee's restrictions. With regard to Roark, Murphy testified

that she told Roark in front of Trish Beckler, the person in charge when Murphy was not on the premises, that she would be working a schedule of 8 a.m. to 4 p.m. Monday through Friday under Murphy's direct supervision and that Roark was to get all of her assignments and permission to do anything from her. Murphy said that she told Roark to report to Beckler and ask her any questions if Murphy was unavailable. Murphy said that the schedules Roark had no longer applied when she began working in a light-duty capacity, that Roark no longer reported to Ball, and that Roark never requested any days off from her. Murphy said that when Roark did not call in on May 14 before 8 a.m., she was considered to be a no call/no show.

On cross-examination, Murphy said that light-duty work was available for Roark and that she was not let go because there was no light-duty work available. Murphy said that she never discussed the days that Roark had requested off from Ball with her, but that she had no reason to doubt that Roark had requested those days off. She said that there was no particular reason that she would not have allowed Roark to be off on the days that she had requested, that she just had to ask her; she said that Roark did not communicate with her. Murphy stated that Roark was not terminated for unexcused absences, but rather she was terminated because she did not show up for work and did not call.

Murphy acknowledged that on May 13, the day before Roark was terminated, she had a letter typed that was to be mailed via certified mail to Roark if she did not come to work the next day. Murphy said that she was going to be out of the office on May 14, and that she had the letter prepared "based on the assumption" that Roark had already been called and that she already had two unexcused absences.

Upon examination from the ALJ, Murphy said that she did not personally advise Roark that her requested days off were no longer valid because she was unaware that Roark had requested any days off. Murphy said that when Roark did not come to work on May 14 and did not call, she was considered to be a no call/no show and was considered terminated, although she acknowledged that that was the day that Roark had previously requested off from Ball.

The ALJ found that Roark failed to prove that she was totally disabled after May 14, 2004, and he further found that the provisions of Arkansas Code Annotated section 11-9-505(a)(1) were not applicable to Roark's claim. Roark now brings this appeal.

Roark's first three points on appeal center around the provisions of Arkansas Code Annotated section 11-9-505(a)(1) (Repl. 2002), which provides:

> Any employer who without reasonable cause refuses to return an employee who is injured in the course of employment to work, where suitable employment is available within the employee's physical and mental limitations, upon order of the Workers' Compensation Commission, and in addition to other benefits, shall be liable to pay to the employee the difference between benefits received and the average weekly wages lost during the period of the refusal, for a period not exceeding one (1) year.

Before this provision is applicable, an employee must prove by a preponderance of the evidence (1) that he sustained a compensable injury; (2) that suitable employment which is within his physical and mental limitations is available with the employer; (3) that the employer has refused to return him to work; and (4) that the employer's refusal to return him to work is without reasonable cause. *Torrey v. City of Fort Smith*, 55 Ark. App. 226, 934 S.W.2d 237 (1996).

Roark asserts that the first three requirements are not in dispute, but that the only dispute is whether the refusal to return her to work was without reasonable cause. However, Roark's second point of appeal concerns the third prong of this test, whether the employer refused to return Roark to work. We hold that the employer did not refuse to return Roark to work.

Roark's second point is "merely allowing the claimant to return to work briefly before terminating her does not relieve the employer from its obligations pursuant to Ark. Code Ann. § 11-9-505." In support of this contention, Roark cites *Allen v. Int'l Paper*, 89 Ark. App. 266, 202 S.W.3d 13 (2005), and *Clayton Kidd Logging Co. v. McGee*, 77 Ark. App. 226, 72 S.W.3d 557 (2002). However, we hold that the present case is distinguishable from the cases cited by Roark.

In *Allen*, the appellant suffered a compensable injury and was restricted by his physician to performing only light-duty work, which the employer initially provided. However, after approximately six months, appellant was told that he could no longer continue performing light-duty work because company policy limited light-duty work to ninety days, and that it was an oversight on the company's part that he had been allowed to continue working in a light-duty capacity past the ninety-day limit. The

employer refused to return the appellant to work until he was fully released by his physician. In reversing and remanding this case, this court held:

> In accepting the appellee's self-imposed policy, the Commission, in effect, allowed an employer to nullify the stated legislative purpose of returning an employee to work. . . . We are convinced that the legislative intent and language of the statute does not allow an employer to implement a ninety-day, light-duty policy to circumvent its obligations designed to extend for a year.

89 Ark. App. at 271, 202 S.W.3d at 16.

In *Clayton Kidd, supra,* this court affirmed an award of additional compensation to the employee under Ark. Code Ann. § 11-9-505, holding that the evidence supported the Commission's finding that the employer had in effect refused to return the employee to work by terminating him several days after he returned to work. According to the employee's testimony, which the Commission found to be credible, the employer told him that "they didn't need him any longer."

Here, the employer did not refuse to return Roark to work; she was provided with light-duty work within her restrictions. It was Roark's actions, by not clearing her days off with her new supervisor when she returned to light-duty work and by taking that day off without permission and not calling in to work, that caused her job to be terminated. The employer did not take any action against Roark until she violated the no call/no show rule that was in the attendance policy, which allowed for immediate termination.

Even if it was determined that the employer had refused to return Roark to work, we hold that such a refusal would not have been without reasonable cause. Roark argues that it was error to simply adopt the finding of the Missouri Employment Security Division denying Roark unemployment benefits as controlling in this case, citing Workers' Compensation Commission opinions that hold that decisions of the Arkansas Employment Security Division and the Social Security Administration are not binding upon the Arkansas Workers' Compensation Commission. However, simply because such decisions are not binding does not mean that the Commission must disregard the Missouri decision.

Furthermore, although Roark argues that her termination was not for good cause because no one told her that the days

that she had previously requested off were no longer valid after she returned to work on light duty, Pam Murphy testified that after Roark returned to work on light duty, she reported directly to her; that Roark's new schedule was 8 a.m. to 4 p.m. Monday through Friday; and that she told Roark that she was to get all of her assignments and permission to do anything from either her or Trish Beckler. Roark did not receive permission from Murphy to be absent on May 14 after Murphy became her supervisor, and her failure to call or come to work on that day was grounds for immediate termination.

■ Roark's last argument is that, alternatively, she is entitled to temporary-total disability benefits because the employer failed to provide her with light-duty work. However, we hold that this argument fails for the same reasons that her section 11-9-505(a)(1) argument fails. But for her own actions, Roark would have been provided continuing light-duty work. However, she violated a provision of the attendance policy that provided for immediate termination upon the first offense, and the employer terminated her for that reason. Roark cites no authority for the proposition that an employer is required to provide light-duty work for an injured employee who has violated a rule or policy of the employer that provides for immediate termination.

Furthermore, Roark, by her own admission, is not totally incapacitated from earning wages. In her testimony, she stated that she was ready, willing, and able to return to work in a light-duty capacity.

Affirmed.

BIRD and CRABTREE, JJ., agree.