2011 Ark. App. 448

**Brandy ROBERTSON, Appellant**

v.

**PORK GROUP, INC., and Tynet Corporation, Appellees.**

**No. CA 11–23.**

Court of Appeals of Arkansas.

June 22, 2011.

Evelyn Elizabeth Brooks, Fayetteville, for appellant.

Emma Diane Graham and Farrah L. Fielder, Fort Smith, for appellees.

ROBERT J. GLADWIN, Judge.

Appellant Brandy Robertson appeals the October 1, 2010 decision of the Arkansas Workers' Compensation Commission finding that appellant is not entitled to temporary-total-disability (TTD) benefits from March 14, 2009, until July 19, 2009. She contends that substantial evidence does not support the Commission's decision. We affirm the denial of benefits.

### Statement of Facts

Appellant was a twenty-six-year old female who was employed by appellee Pork

Group, Inc., as a hog caretaker at the time of her compensable right-ankle injury on May 22, 2008. On that date, while at work, she tripped off a step, injuring her right ankle. She was taken, as directed by appellee, to Dr. Konstantin Berestnev with Arkansas Occupational Health Clinic, who assessed her with a right-ankle sprain. An x-ray showed no fractures, and, |₂after being placed in a moon boot, appellant was advised to take anti-inflammatory, over-the-counter medication during the day and prescribed Vicodin at night, to follow up with Dr. Berestnev in one week, and to avoid climbing.

Appellant was not required to climb at work and returned to work the very next day. Appellant returned to Dr. Berestnev on May 28, 2008, and in his report of that date, Dr. Berestnev noted that appellant's right-ankle sprain was healing, there was no ankle instability, the Achilles tendon was intact, and she was doing better. Appellant was switched from a moon boot to an air cast and was advised to continue taking anti-inflammatory medicine during the day and Vicodin at night, to do stretching exercises, and to follow up with him in two weeks.

On June 11, 2008, appellant was examined again by Dr. Berestnev, who reported no ankle instability, an intact Achilles tendon, good flexion and rotation, no significant pain, and improvement of the sprain. He then released appellant to her regular duties.

Appellant testified that she continued to have pain, and when she was unable to get a response from the human resource employee for appellee, she went to podiatrist Dr. Bryan Sheehan on July 28, 2008. Dr. Sheehan reported appellant's chief complaint as having had bilateral-heel pain for thirteen months, with worsening pain at the end of the day. She was assessed as having Achilles tendinitis, bilateral, and calcaneal spur. Dr. Sheehan's chart also reflected that appellant had been hurt on the job ten months beforehand. Appellant continued to see Dr. Sheehan for her bilateral-heel pain.

|₃On September 9, 2008, because of her persistent problems, she then began treatment with Dr. James Hamilton, who referred her for an MRI, which showed a right-foot, partial Achilles-tendon tear. Appellant was prescribed a walking boot and on October 21, 2008, was returned to work. She was placed in a cast on December 3, 2008.

Appellee then sent appellant back to Dr. Berestnev on January 16, 2009, and he opined that she should have a second MRI to see if there was indeed any propagation of the Achilles-tendon tear found in September. She had a second MRI, which confirmed the right Achilles-tendon partial tear. Dr. Berestnev then referred her to Dr. Terry Sites for an orthopedic evaluation. Dr. Sites diagnosed appellant with "right Achilles tendinopathy with partial tear, chronic." He restricted appellant to sit-down duties and placed her in a non-weight-bearing cast with crutches.

In March 2009, appellant violated appellee's Harassment and Discrimination Policy by repeatedly making racial comments to one of her co-workers. Further, when asked about her comments, appellant screamed and cursed at both the human resources manager and the farm manager, which violated the Rules of Conduct Policy that prohibits the use of profanity in the work place. Consequently, appellant was terminated for her actions.

Appellant continued to treat with Dr. Sites until he referred her to Dr. Jason Pleimann. On July 2, 2009, Dr. Pleimann examined appellant and recommended debridement and repair of her Achilles' insertion with a calcaneal exostectomy, possible gastroc slide, and possible FHL transfer. On July 20, 2009, appellant un-

derwent a right-insertional Achilles debridement and reconstruction, right leg gastrocnemius recession and exostectomy right calcaneus.

The Administrative Law Judge (ALJ) filed an opinion on January 19, 2010, finding that appellant failed to prove that appellee is responsible for medical treatment rendered by Dr. Sheehan and Dr. Hamilton and failed to prove her entitlement to TTD benefits from March 14, 2009, until July 19, 2009. The Commission reversed the ALJ regarding appellant's entitlement to the medical treatment by Drs. Sheehan and Hamilton and affirmed that appellant is not entitled to TTD benefits from March 14, 2009, until July 19, 2009. The only issue on appeal is whether there is substantial evidence to support the Commission's finding that appellant failed to prove her entitlement to TTD benefits.

### Standard of Review

■■ In workers' compensation cases, we affirm if the Commission's decision is supported by substantial evidence—relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Walker v. Cooper Standard Auto.*, 104 Ark. App. 175, 289 S.W.3d 184 (2008). We review the evidence and the reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Id.* Even if we might have reached a different result than the Commission, we must affirm if reasonable minds could have come to the same conclusion as the Commission. *Id.* It is the Commission's duty, not ours, to weigh the evidence, to resolve any conflicts in the evidence, and to assess each witness's credibility. *Id.* at 176–77, 289 S.W.3d at 186. When the Commission, as it did here in part, affirms and adopts the ALJ's opinion, we consider both the ALJ's decision and the Commission's majority opinion. *Fayetteville Sch. Dist. v. Kunzelman,* 93 Ark. App. 160, 217 S.W.3d 149 (2005).

### Statement of Applicable Law

■■ Temporary-total disability is that period within the healing period in which a claimant suffers a total incapacity to earn wages. *See, e.g., RPC, Inc. v. Hargues,* 2011 Ark. App. 264, 2011 WL 1319384. The healing period is "that period for healing of an injury resulting from an accident." Ark.Code Ann. § 11–9–102(12) (Supp.2009). To be entitled to temporary-total-disability benefits, the claimant must prove that she remains within her healing period and suffers a total incapacity to earn wages. *See, e.g., Hargues, supra.* The employer must also provide such medical services "as may be reasonably necessary in connection with the injury received by the employee." Ark.Code Ann. § 11–9–508(a) (Supp.2009).

Arkansas Code Annotated section 11–9–521(a) (Repl.2002) provides in pertinent part as follows:

(a) An employee who sustains a permanent compensable injury scheduled in this section shall receive, in addition to compensation for temporary total and temporary partial benefits during the healing period or until the employee returns to work, whichever occurs first, weekly benefits in the amount of the permanent partial disability rate attributable to the injury, for that period of time set out in the following schedule[.]

Arkansas Code Annotated section 11–9–526 (Repl.2002) provides that

If any injured employee refuses employment suitable to his or her capacity offered to or procured for him or her, he or she shall not be entitled to any compensation during the continuance of the refusal, unless in the opinion of the Workers' Compensation Commission, the refusal is justifiable.

## Discussion

Appellant argues that substantial evidence does not support the Commission's finding that she is not entitled to TTD benefits from March 14, 2009, until July 19, 2009. An employee who sustains a permanent, compensable-scheduled injury shall receive benefits during the healing period or until the employee returns to work, whichever occurs first. Ark.Code Ann. § 11–9–521(a).[1] She maintains that the parties stipulated that she suffered a scheduled injury, and she contends that she was not working during this period.

The Commission, in denying appellant TTD benefits, stated that she "unjustifiably refused employment suitable to her capacity and offered to her by the respondent-employer." *See* Ark.Code Ann. § 11–9–526. Appellant argues that this was an error in fact because she did accept the light-duty work offered to her. She contends that after her acceptance of work, she was terminated for insubordination.

Appellant asserts that she is entitled to TTD benefits because she was in her healing period during the time she was not working, after she was fired for insubordination, as is required by Arkansas Code Annotated section 11–9–521(a) and *Wheeler Construction Company v. Armstrong,* 73 Ark. App. 146, 41 S.W.3d 822 (2001) (where an employee's dependent minor daughter was entitled to receive TTD benefits for the injury employee suffered before his incarceration, even if his incarceration had prevented him from earning wages). She maintains that she was not released by her physician at maximum-medical improvement even at the time of the hearing in this matter. Therefore, she contends that she was still healing during March through July 2009. She argues that, had she not been fired, she would have continued to work. She claims that she did not unjustifiably refuse employment and that, by firing her, appellee took away her option to refuse to work.

Appellant argues that *Superior Industries v. Thomaston,* 72 Ark. App. 7, 32 S.W.3d 52 (2000), supports her argument that she is entitled to TTD benefits because this court held that, in strictly construing section 11–9–526, as is required, the controlling fact in the case was that the claimant did not refuse employment, even though he was fired for misconduct after returning to light-duty work. We stated, "[H]e accepted the employment and was later terminated not by his choice, but at the option of his employer. Since no provision enacted by the legislature supports the appellant's position in this case, we are constrained to affirm [the award of TTD benefits]." *Id.* at 11, 32 S.W.3d at 54.

Appellant points out that the Commission here relied on section 11–9–526, just as Superior Industries argued in its case. That argument urges us to consider that "refusing employment" is akin to being terminated for cause. Appellant contends, however, that this court refused to accept that argument, stating that we had to strictly construe the statute. Appellant argues that her case is the same as the one in *Superior Industries*—she did not refuse to work under section 11–9–526, she was still in her healing period, and she was not working. She argues that the grounds for her termination are immaterial according to *Superior Industries*.

■ We hold that the Commission's denial of TTD benefits is supported by substantial evidence and is affirmed. Appellant had returned to light-duty work; thus,

---

1. Despite the dissent's contention, the parties stipulated that appellant had a scheduled injury and she returned to work. Thus, section 11–9–521 is applicable, as noted by the Commission on page 21 of its opinion.

her restrictions were being accommodated and would have continued so had she not been dismissed for [8]cause. *Wheeler Construction, supra,* addressed section 11–9–521(a), which provides that an employee with a scheduled injury is to receive TTD benefits during his healing period or until he returns to work. Here, the parties stipulated that appellant had a scheduled injury, and appellant had returned to work prior to the dates she requested TTD benefits. She was subsequently fired for insubordination, which was unrelated to her compensable injury as determined by the Commission. Whether she was within her healing period is of no consequence because she had returned to work first. *See* Ark.Code Ann. § 11–9–521(a). Furthermore, *Superior Industries, supra,* is limited to its facts and did not involve section 11–9–521, which distinguishes it from the instant matter. *See Tyson Poultry, Inc. v. Narvaiz,* 2010 Ark. App. 842, 2010 WL 5132119.[2]

In *Roark v. Pocahontas Nursing & Rehabilitation,* 95 Ark. App. 176, 235 S.W.3d 527 (2006), the claimant was injured and sought benefits under Arkansas Code Annotated section 11–9–505 (Repl.2002). The claimant returned to work with light-duty restrictions. *Id.* at 179, 235 S.W.3d at 529. While working, she missed a day without calling in and was fired. *Id.* at 179, 235 S.W.3d at 530. When the claimant made the argument that she was entitled to TTD benefits, we affirmed the Commission's denial, stating:

[9]Roark's last argument is that, alternatively, she is entitled to temporary-total disability benefits because the employer failed to provide her with light-duty work. However, we hold that this

argument fails for the same reasons that her section 11–9–505(a)(1) argument fails. But for her own actions, Roark would have been provided continuing light-duty work. However, she violated a provision of the attendance policy that provided for immediate termination upon the first offense, and the employer terminated her for that reason. Roark cites no authority for the proposition that an employer is required to provide light-duty work for an injured employee who has violated a rule or policy of the employer that provides for immediate termination.

*Id.* at 184, 235 S.W.3d at 533.

This court also affirmed the Commission's denial of TTD benefits in *Mackey v. Cobb Vantress,* 2011 Ark. App. 88, 2011 WL 386992, where the claimant had a scheduled injury, returned to work, and was then terminated. We held that her return to work ended her entitlement to TTD benefits. *Id.* at 1.

Finally, in *Narvaiz, supra,* we specifically limited *Superior Industries, supra,* to its facts in reversing the Commission's grant of TTD benefits. We said:

We think that the broad construction of the statutory language adopted in *Superior Industries,* implying as it does that no act of misconduct can ever constitute a refusal of employment, was unwarranted: were that the case, a claimant provided with light-duty work could simply stop coming to work, assured that he would continue to receive compensation benefits even if he were terminated. Strict construction of a statute does not mandate a literal inter-

---

**2.** The dissent discusses the "line of cases" beginning with *Superior Industries. Superior Industries* was limited to its facts, and *Narvaiz* does not require a remand, as the Commission found in the instant matter that appellant had been terminated for insubordination.

Thus, even though the Commission uses the language of Arkansas Code Annotated section 11-9-526 in our case, because it cites section 11-9-521, we do not consider these two cases a line of cases that is being contravened by our decision.

pretation that leads to absurd results where an alternative interpretation better effects the statute's purpose. *Nucor Corp. v. Kilman,* 358 Ark. 107, 186 S.W.3d 720 (2004). We think that there can be instances of nonperformance or insubordination by an employee that would support a finding that an employee effectively refused suitable employment by engaging in misconduct intended to provoke his termination. Consequently, we limit the holding of *Superior Industries* to its facts, and we reverse and remand for further proceedings consistent with this opinion.

*Narvaiz,* 2010 Ark. App. 842, at 1.

Accordingly, we affirm.

Affirmed.

ABRAMSON, MARTIN, and BROWN, JJ., agree.

HART and ROBBINS, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting.

The majority's decision is wrong because it fails to follow precedent. It is also unfair because it will permit an employer to return an injured employee to work, fire the employee, and thereby eliminate the employee's entitlement to compensation. The majority does not even analyze whether it was proper to fire the claimant; apparently, the grounds for firing are irrelevant. This decision can lead to the gaming of the workers' compensation system for the purpose of ending payment of benefits to employees with compensable injuries. This result is contrary to "the major and controlling purpose of workers' compensation," which is "to pay timely temporary and permanent disability benefits to all legitimately injured workers that suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom, and then to return the worker to the work force." Ark.Code Ann. § 11–9–1001 (Repl.2002).

Furthermore, with this opinion, the majority confers grounds for review in the Arkansas Supreme Court, as there are now conflicting decisions in the Arkansas Court of Appeals. Ark. Sup.Ct. R. 1–2(e). The majority, without stating its reasons for doing so, rejects two established lines of cases: (1) cases providing that on appeal we do not affirm Arkansas Workers' Compensation Commission cases on grounds not ruled upon by the Commission; (2) cases interpreting Ark.Code Ann. § 11–9–526 (Repl.2002).

First, in its analysis, the Commission cites statutory language that "[i]f any injured employee *refuses employment* suitable to his or her capacity offered to or procured for him or her, he or she shall not be entitled to any compensation during the continuance of the refusal, unless in the opinion of the Workers' Compensation Commission, the refusal is justifiable." Ark.Code Ann. § 11–9–526. (Emphasis added.) The Commission, relying on that statutory language, then "finds that the claimant *unjustifiably refused employment* suitable to her capacity and offered by" her employer. (Emphasis added.) The Commission then concludes that the "record demonstrates that the claimant *unjustifiably refused employment* suitable to her capacity offered to her by" her employer. (Emphasis added.) Thus, it is apparent that the Commission relied on section 11–9–526 in making its decision.

The majority, in affirming the case, relies, not on section 11–9–526, but instead another statute, as well as cases citing the statute. It states as follows:

*Wheeler Construction [Company v. Armstrong,* 73 Ark. App. 146, 41 S.W.3d 822 (2001) ], addressed section 11–9–521(a), which provides that an employee with a scheduled injury is to receive

TTD benefits during his healing period or until he returns to work. Here, the parties stipulated that appellant had a scheduled injury, and appellant had returned to work prior to the dates she requests TTD benefits. She was subsequently fired for insubordination, which was unrelated to her compensable injury as determined by the Commission. Whether she was within her healing period is of no consequence because she had returned to work first. *See* Ark. Code Ann. § 11–9–521(a). Furthermore, *Superior Industries [v. Thomaston,* 72 Ark. App. 7, 32 S.W.3d 52 (2000) ], is limited to its facts and did not involve section 11–9–521, which distinguishes it from the instant matter. *See Tyson Poultry, Inc. v. Narvaiz,* 2010 Ark. App. 842, 2010 WL 5132119.

In further support of its decision, the majority relies on *Roark v. Pocahontas Nursing & Rehabilitation,* 95 Ark. App. 176, 235 S.W.3d 527 (2006), where, according to the majority, the "claimant was injured and sought benefits under Arkansas Code Annotated section 11–9–505 (Repl.2002)," and *Mackey v. Cobb Vantress, Inc.,* 2011 Ark. App. 88, 2011 WL 386992, which also cites sections 11–9–505 and 11–9–521.

The error the majority makes in affirming on the basis of sections 11–9–505 and 11–9–521 and the cases citing those statutes is that this was not the basis of the Commission's ruling. Rather, the Commission—clearly and specifically—relied on section 11–9–526. It is this court's "duty to review the decision of the Commission to determine whether it is supported by the facts found by the Commission." *Cook v. Aluminum Co. of Am.,* 35 Ark. App. 16, 20, 811 S.W.2d 329, 332 (1991). Further, in "appeals from the Commission, we cannot indulge the presumption used in appeals from trial courts ... that even if the court states the wrong reason, we will affirm if the judgment is correct." *Id.;* see *Pulaski County Special Sch. Dist. v.*

*Stewart,* 2010 Ark. App. 487, 375 S.W.3d 758.

The Commission specifically made findings based on section 11–9–526, not sections 11–9–505 or 11–9–521. It is our duty to review the Commission's findings to determine whether they are supported by the facts found by the Commission. But the majority, relying on the "right result, wrong reason" theory, instead affirms on other grounds. Having done so, the majority contravenes a longstanding line of precedent. Thus, there are now conflicting decisions in the Arkansas Court of Appeals.

Second, the majority fails to realize that there are cases interpreting section 11–9–526. In *Superior Industries v. Thomaston,* 72 Ark. App. 7, 32 S.W.3d 52 (2000), the employer argued by analogy that since an employee could be denied disability benefits when the employer provides suitable employment and the employee refuses it, then the employee should also be disqualified when his employment was terminated for misconduct. *Id.* at 11, 32 S.W.3d at 54. This court rejected that argument. Noting that there was no statutory basis for the employer's argument, the court instead held that an employee was entitled to benefits where the employee did not refuse employment but instead accepted the employment and was later terminated not by his own choice but at the option of the employer. *Id.*

This court revisited *Superior Industries* in *Tyson Poultry, Inc. v. Narvaiz,* 2010 Ark. App. 842, 2010 WL 5132119. In *Narvaiz,* the court held that "there can be instances of nonperformance or insubordination by an employee that would support a finding that an employee effectively refused suitable employment by engaging in misconduct intended to provoke his termination." *Narvaiz,* at 2. The court then limited the holding of *Superior Industries*

"to its facts" and reversed and remanded for further proceedings. *Id.*

Under these cases, the proper disposition of this case would be to remand for the Commission to make the findings required by *Narvaiz.* In *Narvaiz,* this court concluded that ₁₄the essential question was whether the claimant effectively refused suitable employment by engaging in misconduct *intended to provoke his termination.* The Commission—in an opinion it handed down before this court handed down *Narvaiz*—did not, as required by *Narvaiz,* make any findings regarding whether the claimant engaged in this conduct with the intent to provoke her termination. Thus, the Commission relied on section 11–9–526 in making its decision but did not make specific findings on an issue that this court requires when considering section 11–9–526 in the context of an employee who returned to work but was subsequently terminated. When the Commission fails to make required findings, it is appropriate to reverse and remand the case for the Commission to make such findings. *See, e.g., Second Injury Fund v. Tharp,* 2010 Ark. App. 828, 2010 WL 4978596. In affirming, the majority has reached a decision inconsistent with *Superior Industries* and *Narvaiz,* resulting in conflicting decisions in the Arkansas Court of Appeals.

Thus, I respectfully dissent.

ROBBINS, J., joins.