SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV–15–465

|  |  |
|---|---|
|  | **Opinion Delivered** November 12, 2015 |
| TYSON FOODS, INC.<br>APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br>[NO. G309211 and NO. G402139] |
| V. |  |
| JOSE TURCIOS<br>APPELLEE |  |
|  | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## BRANDON J. HARRISON, Judge

Tyson Foods, Inc., appeals the Arkansas Workers' Compensation Commission's (Commission) decision to award Jose Turcios additional medical benefits and temporary-total-disability (TTD) benefits. Tyson makes three points on appeal: (1) the Commission erred as a matter of law when it awarded temporary-total-disability (TTD) benefits after Turcios returned to work; (2) substantial evidence does not support the TTD award; and (3) the Commission's decision awarding additional medical treatment for Turcios's knee injury is not supported by substantial evidence. We affirm in part and reverse and remand in part.

### I. *Brief Factual Summary*

Twenty-five-year-old Jose Turcios cleaned Tyson's corporate buildings in Northwest Arkansas. He fell at work in August 2013 and again in October 2013. Turcios reported the August fall and received ibuprofen and ice for his right knee from the company nurse. He kept working his regular job until he slipped and fell again on his right knee in October. The October fall was more severe; Turcios reported that he heard a loud popping noise and felt severe pain. His knee did not improve with conservative treatment, and a radiology report associated with a December 2013 MRI revealed that Turcios had suffered a "complex horizontal and oblique tear of the posterior horn and body of the medial meniscus" and a "suspected chronic partial tear involving proximal and mid ACL" but that the "MCL and fibular collateral ligament [were] normal." Tyson accepted the meniscus injury as compensable and paid for Dr. Terry Sites to repair it during surgery in February 2014. Tyson, however, controverted medical treatment for the ACL injury.

Although Turcios was released to return to restricted-duty work before his knee surgery occurred, Tyson had no positions available within his restrictions. So Turcios received TTD benefits until 5 March 2014. On 10 March 2014, Dr. Sites released him to light-duty work after the meniscus surgery. Tyson provided a position in the mail room sorting papers, which accommodated Turcios's work restrictions—including being able to sit. Turcios called in sick on March 10, but worked on March 11. He worked sporadically until Tyson terminated his employment on 31 March 2014, when he missed another day of work. Tyson said Turcios was terminated because he had accumulated too

many points under its attendance policy—including points that had been assessed for three days of no call/no show.

During the administrative hearing, Turcios testified that his knee was swollen while he worked in the mailroom, that he was unable to elevate it, and that "it gave me a lot of pain." Turcios said that he missed work in the mail room because of his knee but that he also missed work while stationed in the mail room for other health problems, including blood-sugar levels. On cross-examination, Turcios admitted that the mail-room work was within Dr. Sites's restrictions and that he called in only twice to let Tyson know he would be absent after he started the restricted-duty work.

After the hearing, the administrative law judge (ALJ) found that Turcios sustained compensable injuries to his right knee "in the form of a MCL tear" and his injuries were caused by his two work-related falls in August and October 2013.[1] The ALJ, however, also found that Turcios "failed to prove by a preponderance of the evidence that he suffered a compensable injury in the form of an ACL tear while employed by [Tyson]."

The Commission reversed the ALJ in a 2-1 decision and found that Turcios suffered the ACL injury as a result of his compensable right-knee injury and was entitled to medical treatment. The Commission also found that Turcios had proved his entitlement to TTD benefits from 6 March 2014 through a date yet to be determined.

## II. *Standard of Review*

---

[1] The radiology report specifically states that the MCL was normal and the medial meniscus was torn. Yet the parties stipulated that "the claimant sustained a compensable injury to his right knee in the form of a MCL tear on October 29, 2013." The Commission used quotation marks for the two stipulations of "MCL tear"—apparently indicating its understanding that Turcios suffered a torn meniscus, not an MCL tear.

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence. *Smith v. City of Ft. Smith*, 84 Ark. App. 430, 143 S.W.3d 593 (2004). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether this court might have reached a different result from the Commission. If reasonable minds could have reached the Commission's result, then we affirm. *Id.*

### III.  *The ACL Injury*

Here, the disputed medical-treatment issue was whether Turcios was entitled to treatment for his right-knee ACL tear. We affirm the Commission's decision to award medical benefits for Turcios's ACL injury. "An employer shall promptly provide for an injured employee such medical [ ] services . . . as may be reasonably necessary in connection with the injury received by the employee." Ark. Code Ann. § 11-9-508(a) (Repl. 2013). The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). What constitutes reasonably necessary treatment is a question of fact for the Commission, which has the duty to use its expertise to determine the soundness of medical evidence and to translate it into findings of fact. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005). A claimant may be entitled to ongoing medical treatment after the healing period has ended if the treatment is geared toward management of the compensable injury. *Patchell v. Wal–Mart Stores, Inc.*, 86 Ark. App. 230, 184 S.W.3d 31 (2004).

Tyson argues that there is no substantial evidence that Turcios's ACL injury was a result of his August or October work-related falls. The evidence, in Tyson's view, does not support the Commission's conclusion because an MRI report indicated the ACL condition was "chronic"; another doctor Tyson consulted, Dr. Hronas, reported that "the ACL is intact without findings of acute injury"; Dr. Sites noted that Turcios's obesity had contributed to his knee problems; and Dr. Sites could not reliably tell when the ACL injury occurred and only relied on Turcios's self-reporting.

We are not persuaded by Tyson's arguments. The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002). In this case, the Commission credited Dr. Sites's opinion, which he gave after performing surgery on Turcios's torn meniscus, that "it is more likely than not that the work injury described in October of 2013 was the cause of the anterior cruciate ligament [ACL] injury and the meniscal injuries[.]" And while the Commission acknowledged the consulting doctor's (Dr. Hronas) opinion that "[t]he ACL is intact without findings of an acute injury," it specifically credited Dr. Sites's medical opinion over Dr. Hronas's medical opinion. Because substantial evidence supports the Commission's conclusion that treatment for Turcios's ACL injury was reasonably necessary treatment connected to his compensable right-knee injury, we affirm on this point.

IV. *The TTD Benefits*

We now turn to the Commission's TTD award. Tyson argues that the Commission erred as a matter of law in awarding TTD benefits to Turcios for the period after he was returned to work. It also argues that substantial evidence does not support the TTD award. Because the Commission does not adequately explain its decision, we reverse and remand for furthering proceedings on this issue.

Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages; the "healing period" for an accidental injury continues until the employee is as restored as the permanent character of his injury will permit—and that ends when the underlying condition causing the disability has become stable and further treatment will not improve that condition. *Carroll Gen. Hosp.v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996). When the healing period has ended is a factual determination that the Commission must make, and it will be affirmed on appeal if supported by substantial evidence. *Id.*

Two statutes inform when a claimant may be disqualified from receiving TTD: Ark. Code Ann. § 11-9-521 and Ark. Code Ann. § 11-9-526. Though the statutes by their plain language apply only to scheduled injuries, our appellate courts have applied them to unscheduled injuries, too. *See Tyson Poultry, Inc. v. Narvaiz*, 2012 Ark. 118, 388 S.W.3d 16 (discussing section 526) and *Robertson v. Pork Grp., Inc.*, 2011 Ark. App. 448, 384 S.W.3d 639 (applying section 521).

Arkansas Code Annotated section 11-9-521(a) (Repl. 2013) provides:

(a) An employee who sustains a permanent compensable injury scheduled in this section shall receive, in addition to compensation for temporary total and temporary partial benefits during the healing period or until the employee returns to work, whichever occurs first, weekly benefits in the

 

amount of the permanent partial disability rate attributable to the injury, for that period of time set out in the following schedule[.]

Arkansas Code Annotated section 11-9-526 states:

If any injured employee refuses employment suitable to his or her capacity offered to or procured for him or her, he or she shall not be entitled to any compensation during the continuance of the refusal, unless in the opinion of the Workers' Compensation Commission, the refusal is justifiable[.]

The Commission cited one case, *Pyles v. Triple F. Feeds of Texas*, 270 Ark. 729, 606 S.W.2d 146 (Ark. App. 1980), to support its decision, stating that "if, during the period while the body is healing, the employee is unable to perform remunerate labor with reasonable consistency and without pain and discomfort, his temporary disability is deemed total." Other caselaw, however, seems to state that after the claimant is released by the doctor and returns to work, even if he remains in his healing period, then the claimant is no longer incapacitated from earning wages and therefore does not qualify for TTD. *Compare Robertson v. Pork Grp., Inc.*, 2011 Ark. App. 448, 384 S.W.3d 639 and *Roark v. Pocahontas Nursing & Rehab.*, 95 Ark. App. 176, 235 S.W.3d 527 (2006) with *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001). Section 521 does not define when an employee "returns to work" for purposes of the statute and TTD benefits. *See Farmers Coop. v. Biles*, 77 Ark. App. 1, 7, 69 S.W.3d 899, 903 (2002).

Our court has further held that if an employee is returned to limited-duty work after a compensable injury, but fired for misconduct or absenteeism unrelated to the injury, she is not entitled to TTD because her restrictions were being accommodated and

SLIP OPINION

would have continued had she not been dismissed for cause. *See Robertson v. Pork Grp., Inc.*, 2011 Ark. App. 448, 384 S.W.3d 639; *see also Roark v. Pocahontas Nursing & Rehab.*, 95 Ark. App. 176, 235 S.W.3d 527 (2006) (affirming the Commission that a violation of an employer's attendance policy may be grounds for disqualification of TTD benefits). But there are cases to the contrary. *See, e.g.*, *Superior Indus. v. Thomaston*, 72 Ark. App. 7, 10–11, 32 S.W.3d 52, 54 (2000) ("[T]he basis for claimant's employment separation is irrelevant in determining claimant's entitlement to temporary total disability benefits."). And in the more recent case of *Narvaiz*, 2012 Ark. 118, 388 S.W.3d 16, our supreme court affirmed the Commission's reasoning that an employee's insubordination and misconduct did not amount to a refusal of suitable employment under section 526.

Here, the Commission found that Turcios proved he was entitled to TTD benefits beginning 6 March 2014 until a date yet to be determined. In reaching this conclusion, the Commission stated:

> The parties stipulated that the respondent paid temporary total disability benefits through March 5, 2014. Dr. Sites returned the claimant to sit-down work only on March 6, 2014. The claimant testified that he attempted to perform sit-down work only for the respondent, but that he suffered from pain and swelling in his injured right leg and consequently was unable to perform even sit-down work.

We remand for the Commission to provide us a more detailed explanation on how it decided to award TTD benefits to Turcios after Dr. Sites had released him to light-duty work in Tyson's mail room. The Commission must make factual findings and legal conclusions with sufficient detail and particularity to allow us to decide whether its decision is in accordance with the law. *Parker v. Advanced Portable X-Ray, LLC*, 2014 Ark. App. 11, at 5–6, 431 S.W.3d 374, 379. As the Commission decision stands now, we

cannot make a meaningful review of this case. This is so because, in part, the only factual findings we have by the Commission regarding TTD are in the above-referenced quote. It is unclear whether the Commission determined that Turcios remained in his healing period or started a new healing period, whether he suffered a total incapacity to earn a meaningful wage, whether Turcios "returned to work" within the meaning of section 521, whether Turcios's absenteeism was related to his compensable knee injury or an unrelated medical issue, and whether Turcios's alleged violations of Tyson's attendance policy did or did not affect his TTD eligibility under section 526. We therefore reverse and remand to the Commission for further findings and proceedings consistent with this opinion on this point.

V. *Conclusion*

We affirm the Commission's decision awarding medical treatment for Turcios's right-knee ACL injury. Because we are unable to conduct a meaningful review of the Commission's TTD award, we reverse and remand for the Commission to make more robust factual findings and for it to determine the applicability (or inapplicability) of Ark. Code Ann. § 11-9-521 and § 11-9-526.

Affirmed in part; reversed and remanded in part.

GLADWIN, C.J., and GRUBER, J., agree.

*Bassett Law Firm LLP*, by: *Curtis L. Nebben*, for appellant.

*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellee.