2011 Ark. App. 414

**WAYNE SMITH TRUCKING, INC., And Arkansas Trucking Association, Appellants**

v.

**Dan McWILLIAMS, Appellee.**

No. CA 10–1232.

Court of Appeals of Arkansas.

June 1, 2011.

Melissa Faye Wood, Little Rock, for appellants.

Thomas W. Mickel, Conway, for appellee.

DAVID M. GLOVER, Judge.

Appellee Dan McWilliams suffered an admittedly compensable injury on April 13, 2008, while tightening a nylon strap on a load of baled cardboard; the strap broke, causing him to fall and strike his head on one of the trailer's dolly legs. He suffered a laceration from the midline of his forehead to just below his hairline toward his left ear. The laceration required nineteen stitches and left a scar across McWilliams's forehead.

McWilliams filed a claim for permanent-disability benefits.[1] At the hearing, the parties stipulated that McWilliams had sustained a compensable injury on April 13, 2008; that appellants had paid all medical expenses to date; that McWilliams's healing period had ended on or before September 14, 2009; that appellants had paid the maximum disfigurement benefits of $3500; and that appellants controverted McWilliams's entitlement to permanent-disability benefits.

McWilliams was the only witness at the hearing on his claim for permanent-disability benefits. He said that he did not lose consciousness when the accident occurred, but that he was hurting "pretty bad" when he got up from the ground. He was initially treated at a local hospital, where the laceration was sewn up; he underwent a CT scan three days later in Morrilton where he was seen by Dr. Joel Milligan, his family doctor, who took him off work for five days. McWilliams denied having headaches prior to his injury, but testified that since his injury, he has been having headaches toward the left side of his forehead, just a little above the scar. He testified that sometimes he had headaches every day, but other times he might go a day or two without having a headache. He testified that the headaches did not affect his vision or hearing, but he stated that on occasion they got intense enough that he

---

1. McWilliams also filed a claim for wage-loss benefits but specifically reserved that issue at the hearing. However, the ALJ noted in its opinion that McWilliams was working seventy hours per week, the maximum allowed by the DOT, and therefore it was highly unlikely that he could prove entitlement to wage-loss disability.

had to stop and lie down to reduce the symptoms. According to him, that cut into his fourteen-hour workdays.

McWilliams testified that Dr. Milligan sent him to Dr. Reginald Rutherford due to his persistent headaches; that Dr. Rutherford prescribed Carbatrol for his headaches; and that he sees Dr. Rutherford every three months or so. While he was satisfied with Dr. Rutherford's treatment, he testified that he still could not get rid of his headaches. McWilliams agreed that he told Dr. Milligan that he only had headaches when he put pressure on the area of the scar. According to him, that statement was correct when he told Dr. Milligan, but he also testified that he cannot lie on that part of his head and that he cannot wear a hard hat (which he was required to do at some of the locations to which he traveled). McWilliams testified that he had passed his DOT physical on February 16, 2009, but that it was noted in his health history that he had headaches. McWilliams stated that he believed the headaches had become worse since April 2008, and that although the medication prescribed by Dr. Rutherford had helped alleviate the number of headaches, it did not prevent the headaches.

Medical records introduced at the hearing indicate that McWilliams underwent a CT head scan at St. Anthony's Medical Center in Morrilton on April 16, 2008. This report noted:

FINDINGS: Focal laceration is noted at the left frontal scalp. No fracture, intracranial hemorrhage, contusion, or other brain parenchymal abnormality is seen. No extraaxial fluid collection or midline shift. There is a regular fatty deposition and coarse calcification along the superior and anterior falx. The corpus callosum appears to be incompletely developed, especially related to the posterior aspect. No other definite congenital abnormality is identified. The fatty regions are midline and do not appear to be positioned in a nondependent manner to suggest free-floating fat. They are not present in the lateral ventricles, third ventricle, basilar cisterns, or fourth ventricle. Some are positioned in the region of the absent posterior corpus callosum. No other abnormalities are identified. No fracture is seen. Visualized aspects of the sinuses and orbits are unremarkable.

IMPRESSION:

1. No acute intracranial abnormality.

2. Incomplete corpus callosum and fatty midline tissue with dense coarse calcifications, is a congenital variant. This does not appear to be due to free-floating fatty tissues as can be seen with a ruptured dermoid. However, if the patient has history of chronic headaches or recurrent headaches, further evaluation could be performed with MRI of the brain and MRI of the spine.

A March 2, 2009 progress note from Dr. Rutherford indicated that McWilliams's CT imaging of the head was normal, but that he had persisting sensory loss and neuropathic-pattern pain at the site of the scalp laceration; that the laceration was well healed; and that there was no impairment of motor function for the frontalis muscle. Dr. Rutherford recommended 200 mg of Carbatrol twice per day and Tegretol. A March 23, 2009 progress note from Dr. Rutherford indicated that McWilliams reported the Tegretol to be of benefit pertaining to diminished neuropathic pain; that it was well tolerated at a level of 5.5, which is low therapeutic; and that the Carbatrol 200 mg twice per day would be continued.

A September 14, 2009 progress note from Dr. Rutherford indicated that McWilliams reported continuing pain and sensory loss in the left frontal region, which was a

permanent aftermath of the injury, and that he was at maximum medical improvement. It also designated that he had a fourteen-percent impairment of the whole person as derived from Table IX on page 145 of the Fourth Edition AMA *Guides to the Evaluation of Permanent Impairment.*

On September 24, 2009, Shy Cox (a registered-nurse medical consultant with Medical Case Management of Arkansas, Inc.) requested that Dr. Rutherford state any/all objective findings to support the stated impairment rating, to which Dr. Rutherford replied that it was based upon clinical exams. Appellants' counsel also inquired about his findings used to support the permanent-impairment rating—she assumed that the clinical examination was only based on subjective complaints of pain and headaches in addition to the altered sensation identified by McWilliams during the evaluation. Dr. Rutherford replied, "The impairment rating is based upon complaints of pain and sensory loss related to laceration left forehead. This is related to peripheral nerve injury secondary to laceration involving the first division of the trigeminal nerve."[2] Appellants' counsel then further responded that the impairment rating must be supported by objective findings, which she had been unable to identify. She observed that while Dr. Rutherford's letter referenced peripheral-nerve injury secondary to the laceration, she did not see that an EMG or a nerve-conduction-velocity test was performed to document that damage. Dr. Rutherford again responded that an EMG/NCV was not possible for the nerve involved and that his diagnosis was based on history and examination.

In an opinion filed June 23, 2010, the administrative law judge found that McWilliams had proven by a preponderance of the credible evidence that he was entitled to a six-percent impairment to the body as a whole, which was supported by objective findings. The ALJ noted that McWilliams was an extremely credible witness (even though the issue of his entitlement to permanent-impairment benefits turned primarily on the medical evidence rather than McWilliams's credibility); he also noted that Dr. Rutherford's impairment rating was derived from the Fourth Edition AMA *Guides to the Evaluation of Permanent Impairment,* Table IX. In his opinion, the ALJ cited from the *Guides to the Evaluation of Permanent Impairment,* 145 (4th Ed.1993):

> The trigeminal nerve (cranial nerve V) is a mixed nerve having sensory fibers to the face, cornea, anterior scalp, nasal and oral cavities, tongue, and the supratentorial dura mater. The nerve also transmits motor impulses to the muscles of mastication.
>
> Sensation in the parts served by the three major divisions of the trigeminal nerve is tested with the usual techniques for evaluating sensation, that is, pain, temperature, and touch; the two sides of the face or body are compared. Bilateral loss of facial sensation is uncommon. An impairment percentage for loss of sensation involving the trigeminal nerve is *combined* with an estimated impairment percentage for pain or motor loss.

Using the information contained in Table IX, the ALJ found that Dr. Rutherford had concluded McWilliams sustained mild impairment due to uncontrolled facial-neurologic pain and assigned him the maxi-

---

2. The trigeminal nerve is either of the largest pair of cranial nerves, essential for the act of chewing, general sensibility of the face, and muscular sensibility of the obliquus superior.

The trigeminal nerves have sensory, motor, and intermediate roots and connect to three areas in the brain. Mosby's Medical & Nursing Dictionary 1098 (1983).

mum impairment permitted for mild impairment without clarifying the basis for his determination. However, the ALJ further noted that McWilliams was able to work seventy hours per week, referencing McWilliams's testimony that, while the medication prescribed by Dr. Rutherford did not prevent his headaches, it had reduced them from occurring daily to occurring only two to three times per week.

The ALJ cited *Singleton v. City of Pine Bluff (Singleton II)*, 102 Ark.App. 305, 285 S.W.3d 253 (2008), for our court's holding that claimants are entitled to an impairment rating if there are objective findings that support it even if the AMA *Guides to the Evaluation of Permanent Impairment* (4th Ed.1993) do not contain any express method of rating an injury that is compensable pursuant to Arkansas law. In this regard, the ALJ found that there were definitely observable, objective findings in the claim, notwithstanding McWilliams's post-concussive headache syndrome and his complaints of pain, in the form of the laceration injury to the left-frontal region of his forehead (the site of his complaints of pain). The ALJ further found that while it is true that there must be medical evidence supported by objective findings to establish a compensable injury, it does not follow that such evidence is required to establish each and every element of compensability—all that is required is that the medical evidence of the injury and impairment be supported by objective findings, i.e., findings that cannot come under the voluntary control of the patient. The ALJ found that the scar on McWilliams's forehead and the injury to the trigeminal nerve constituted objective medical findings to support impairment. The ALJ then cited *Singleton v. City of Pine Bluff*

*(Singleton I)*, 97 Ark.App. 59, 244 S.W.3d 709 (2006), for our court's holding that there is no requirement that medical testimony be based solely or expressly on objective findings, only that the record contain objective findings of injury and the ALJ, therefore, found that the record reflected objective findings to support permanent impairment. Finding that the medicine prescribed by Dr. Rutherford had somewhat alleviated McWilliams's headaches from daily to two or three times per week, the ALJ decreased the fourteen-percent permanent-impairment rating to a six-percent whole-body impairment based upon the damage to the trigeminal nerve and the frequency of the headaches.

Appellants filed a timely notice of appeal to the Full Commission. On July 26, 2010, while awaiting the Commission's decision, Dr. Brad Thomas was asked to evaluate McWilliams and give his opinion as to Dr. Rutherford's treatment. Dr. Thomas noted that McWilliams had a CT scan in 2008 that showed a small amount of soft tissue swelling in the left forehead, as well as what appeared to be a midline questionable lesion, such as a dermoid.[3] Dr. Thomas did not see any objective findings based on the 2008 CT scan or McWilliams's physical exam that would cause the headaches, but he stated that it was very possible to have post-concussive headaches that are chronic in nature. Although Dr. Thomas did not believe that there were any objective findings, he believed that the headaches could be real; he recommended that McWilliams continue the treatment Dr. Rutherford had outlined; and he also recommended an MRI of the brain with and without contrast due to the midline lesion seen on the CT scan, as it could be a

---

**3.** "Dermoid" is defined as of or pertaining to the skin. "Dermoid cyst" is defined as a tumor, derived from embryonal tissues, that consists of a fibrous wall lined with epithelium and a cavity containing fatty material, and, frequently, hair, teeth, bits of bone, and cartilage. MOSBY'S MEDICAL & NURSING DICTIONARY 318 (1983).

dermoid or lipoma[4] that would not be associated with the worker's compensation claim.

In a letter dated August 31, 2010, to Dr. Thomas, which was a follow up to her conversation of August 30, 2010, with him, Shy Cox stated that McWilliams recently underwent an MRI of the brain under his private health insurance per Dr. Thomas's recommendation for an incidental finding of lipoma versus dermoid tumor. Cox confirmed that in the August 30 discussion, Dr. Thomas advised that the MRI confirmed a lipoma with some mild swelling that he believed was the likely cause of the subjective headache complaints. Cox then asked Dr. Thomas if, in his medical opinion, the findings of the lipoma and mild swelling were related to the injury of April 13, 2008, to which Dr. Thomas answered "no." She also asked if Dr. Thomas believed that the findings of lipoma and mild edema were the likely cause of McWilliams's headache complaints, to which Dr. Thomas answered "yes." As a result of these answers, on September 3, 2010, appellants filed a motion to remand the case to the ALJ based upon the new findings by Dr. Thomas. Before that motion could be ruled upon, the Commission entered an opinion on September 7, 2010, affirming and adopting the ALJ's opinion awarding McWilliams a six-percent whole-body impairment. On October 8, 2010, appellants filed a motion to suspend their appeal for sixty days and requested that the case be remanded to an ALJ pursuant to their previously filed motion. The Commission, in an opinion filed October 19, 2010, denied appellants' motion to remand, finding that appellants were not diligent in obtaining Dr. Thomas's report. On October 29, 2010, the Commission filed an opinion denying appellants' motion to suspend the appeal in light of its decision denying appellants' motion to remand.

Appellants filed a timely notice of appeal to this court, asserting (1) that the Commission abused its discretion in denying the motion to remand and (2) that substantial evidence does not exist to support the Commission's decision that McWilliams proved entitlement to a permanent-impairment rating. We affirm on both issues.

## Denial of Motion to Remand

Arkansas Code Annotated section 11–9–705(c)(1)(A), (B), and (C)(I) (Supp. 2009) provides:

(c) INTRODUCTION OF EVIDENCE

(1)(A) All oral evidence or documentary evidence shall be presented to the designated representative of the commission at the initial hearing on a controverted claim, which evidence shall be stenographically reported.

(B) Each party shall present all evidence at the initial hearing.

(C)(I) Further hearings for the purpose of introducing additional evidence will be granted only at the discretion of the hearing officer or commission.

In *Hargis Transport v. Chesser*, 87 Ark. App. 301, 305, 190 S.W.3d 309, 312 (2004), this court held:

The Commission's discretion should be exercised and the motion to present new evidence should be granted where the movant was diligent and where the new evidence is relevant, is not cumulative, and would change the result. *Mason v. Lauck*, 232 Ark. 891, 340 S.W.2d 575 (1960). The Commission's exercise of discretion in determining whether to remand for the taking of additional evi-

---

4. "Lipoma" is a benign tumor consisting of mature fat cells. MOSBY'S MEDICAL & NURSING DICTIONARY 625 (1983).

dence will not be lightly disturbed on appeal. *Haygood v. Belcher*, 5 Ark.App. 127, 633 S.W.2d 391 (1982).

In the present case, the Commission stated, "Whether or not Dr. Thomas' July 26, 2010 letter is relevant, not cumulative, or would change the result, the record does not demonstrate that the [appellants] were diligent in obtaining this report and seeking its introduction into evidence." We find no abuse of discretion in this decision.

Appellants were aware of the existence of abnormalities since McWilliams's 2008 CT scan, when it was noted, "Incomplete corpus callosum and fatty midline tissue with dense coarse calcifications. . . . [D]oes not appear to be due to free-floating fatty tissues as can be seen with a ruptured dermoid. *[I]f the patient has history of chronic headaches or recurrent headaches, further evaluation could be performed with MRI of the brain and MRI of the spine.*" (Emphasis added.) Furthermore, the independent medical examination with Dr. Thomas was not scheduled until July 26, 2010, over a month after the ALJ's opinion awarding McWilliams the six-percent whole-body impairment rating was issued. Appellants made no effort to explore the possibility of other causes for McWilliams's headaches until after the ALJ had awarded benefits. The Commission's finding that appellants were not diligent is not an abuse of discretion.

*Sufficiency of the Evidence*

■ In *Bio–Tech Pharmacal, Inc. v. Blouin*, 2010 Ark.App. 714, at 2–3, 379 S.W.3d 594, 597, this court set forth the standard of review in workers' compensation cases:

In deciding whether substantial evidence supports the Commission's decision, this Court views the evidence (and the inferences deducible therefrom) in the light most favorable to the Commission's find-

ings. *Walker v. Cooper Auto.*, 104 Ark. App. 175, 176, 289 S.W.3d 184, 186 (2008). We affirm if reasonable minds could reach the Commission's conclusion, always remembering that weighing the evidence and making credibility determinations are within the Commission's province, not ours. *Walker*, 104 Ark.App. at 176–77, 289 S.W.3d at 186. When the Commission, as it did here, affirms and adopts the ALJ's opinion, we consider both the ALJ's decision and the Commission's majority opinion. *Fayetteville Sch. Dist. v. Kunzelman*, 93 Ark.App. 160, 162, 217 S.W.3d 149, 151 (2005).

Furthermore, in *LVL, Inc. v. Ragsdale*, 2011 Ark.App. 144, at 7, 381 S.W.3d 869, 873, this court held

The Commission has authority to accept or reject medical opinion and to determine its medical soundness and probative force. *Oak Grove Lumber Co. v. Highfill*, 62 Ark.App. 42, 968 S.W.2d 637 (1998). It is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact. *Id.* It is the Commission's responsibility to draw inferences when testimony is open to more than a single interpretation, whether controverted or uncontroverted; when it does so, its findings have the force and effect of a jury verdict. *Id.*

Appellants argue that the Commission erred in finding that McWilliams had any ratable, functional impairment as a result of his April 13, 2008 injury. They point to the fact that McWilliams's forehead laceration was repaired; that the CT scan revealed no acute intracranial abnormality; and that he had no vision or hearing problems as a result of the injury.

■ "Permanent impairment" has been defined as "any permanent functional

or anatomical loss remaining after the healing period has ended." *Main v. Metals,* 2010 Ark.App. 585, at 9, 377 S.W.3d 506, 511. Any determination of the existence or extent of physical impairment must be supported by objective and measurable findings. *Dillard's v. Johnson,* 2010 Ark.App. 138, 374 S.W.3d 92. "Objective findings" are those that cannot come under the voluntary control of the patient, and specifically exclude pain, straight leg-raising test, and range-of-motion tests. Ark.Code Ann. § 11–9–102(16)(A) (Repl.2002); *Vangilder v. Anchor Packaging, Inc.,* 2011 Ark.App. 240, 2011 WL 1166885. In *Wal–Mart Assocs., Inc. v. Ealey,* 2009 Ark.App. 680, 2009 WL 4654630, this court, in addressing an impairment rating, held that there was no requirement that medical testimony be based solely or expressly on objective findings, only that the medical evidence of the injury and impairment be supported by objective findings. Furthermore, permanent benefits shall be awarded only upon a determination that the compensable injury was the major cause of the disability or impairment. Ark.Code Ann. § 11–9–102(4)(F)(ii)(*a*) (Supp.2009). "Major cause" means more than fifty percent of the cause. Ark.Code Ann. § 11–9–102(14)(A) (Supp.2009).

An injured employee is entitled to compensation for the permanent functional or anatomical loss of use of the body as a whole whether his earning capacity is diminished or not. *Vangilder, supra.* The Commission is authorized to determine what portion of the medical evidence to credit and to translate that evidence into a finding of permanent impairment using the AMA Guides; the Commission may assess its own impairment rating rather than rely solely upon determination of the validity of ratings assigned by physicians. *Main v. Metals, supra.*

Appellants argue that McWilliams's headaches are subjective complaints that have no objective findings and therefore are not compensable. They further argue that the ALJ arrived at a six-percent rating when Dr. Rutherford had given McWilliams a fourteen-percent impairment rating. We do not find appellants' arguments persuasive.

The ALJ relied upon the *Singleton* cases in awarding permanent-disability benefits. In those cases, Singleton was a Pine Bluff police officer who suffered a compensable injury when he was shot in the left ankle by a felon. He subsequently filed a claim for disability benefits—in *Singleton I,* the Commission found that he failed to prove that he had sustained a compensable anatomical impairment or wage-loss disability and denied the claim. Our court reversed, holding that it was undisputed that Singleton was shot in the left ankle and that five bullet fragments remained in his ankle; therefore, there was unquestionably objective evidence of physical injury. Our court further held that, while objective findings are required to establish a compensable injury, it did not follow that such evidence was required to establish each and every element of compensability—that all that was required was that the medical evidence be supported by objective findings. We reversed and remanded the Commission's denial of benefits because while there were objective findings, the Commission had rejected the medical opinion regarding anatomical impairment simply because it was based in part on nonobjective evidence of an antalgic gait.

In *Singleton II,* after remand from this court, the Commission again denied relief on the same theory of law held to be erroneous in *Singleton I.* Our court again reversed and remanded, holding that if the AMA Guides do not contain an express

method of rating an injury that is compensable pursuant to Arkansas law, the Commission must adopt a reasonable method of doing so.

■ Turning to the case at hand, although appellants argue that McWilliams's scar is not an objective finding, based upon the facts in this case, we disagree. As in *Singleton I*, there is unquestionably objective evidence of physical injury—in this case, in the form of a scar across McWilliams's forehead. In accordance with *Singleton I* and *Wal–Mart Assocs., Inc. v. Ealey, supra,* there is no requirement that medical testimony be based solely or expressly on objective findings, only that the medical evidence of the injury and impairment be supported by objective findings. Dr. Rutherford, based upon patient history, examination, the scar, and the AMA *Guides to the Evaluation of Permanent Impairment* (4th Ed.1993), used his medical expertise to render an opinion concerning McWilliams's permanent impairment. The ALJ, and subsequently the Commission, affirmed this finding. It is the Commission's duty to use its experience and expertise in translating the testimony of medical experts into findings of fact. *LVL, Inc., supra.* We hold that reasonable persons could reach the Commission's conclusion in this case, especially in light of McWilliams's testimony that the headaches are at the site of the scar and that he did not have headaches prior to the laceration to his head, and based upon Dr. Rutherford's determination after examination of McWilliams that there was damage to the trigeminal nerve, a nerve not capable of being assessed for damage through an EMG or an NCV. Therefore, we affirm.

Affirmed.

HOOFMAN, J., agrees.

GRUBER, J., concurs.

RITA W. GRUBER, Judge, concurring.

I fully agree with the majority's decision to affirm the Commission's permanent-impairment rating in this case. I write separately to caution that our decision must not be interpreted to mean that a scar, in and of itself, necessarily constitutes an objective finding sufficient to support the existence of physical impairment.

The Commission found that "the scar on Mr. McWilliams's forehead *and* injury to the trigeminal nerve" constituted objective medical evidence to support an impairment rating. (Emphasis added.) It noted Dr. Rutherford's statement in a letter to appellant's attorney that the rating was "based upon complaints of pain and sensory loss related to laceration left forehead. This is related to peripheral nerve injury secondary to the laceration involving the first division of the trigeminal nerve." The Commission also noted Dr. Rutherford's office entry that Mr. McWilliams had "persisting sensory loss and neuropathic pattern pain at the site of scalp laceration" some eleven months after his head injury, and the testimony of Mr. McWilliams, an "extremely credible" witness, that he seldom had headaches before.

I emphasize my viewpoint that the scar in and of itself does not constitute substantial evidence to support the Commission's conclusion that objective medical findings supported an impairment rating. Substantial evidence can be found, however, from the location of the scar at the site of the forehead laceration; Dr. Rutherford's medical explanation of the relationship between pain and sensory loss, the laceration, and peripheral nerve injury secondary to laceration of the trigeminal nerve; and Mr. McWilliams's history of an absence of headache problems until after the head injury. Credibility, including the credibility of medical opinions that an injury resulted in anatomical impairment, is

a matter for the Commission to determine. *Singleton v. City of Pine Bluff,* 97 Ark. App. 59, 244 S.W.3d 709 (2006).

For the above reasons, I concur in the majority's decision.