2011 Ark. App. 736
**CITY OF FOREST CITY
and Municipal League
WCT, Appellants**

v.

**Michael L. LONG, Appellee.**

**No. CA 11–196.**

Court of Appeals of Arkansas.

Nov. 30, 2011.

1. 9 Powell on Real Property, § 62.05 (Wolf ed.2000).

2. *DeMers v. Graupner,* 186 Ark. 214, 216, 53 S.W.2d 8, 9 (1932).

3. 186 Ark. at 217, 53 S.W.2d at 9.

J. Chris Bradley, North Little Rock, for appellant.

Cynthia A. Estes, Little Rock, for appellee.

CLIFF HOOFMAN, Judge.

Forrest City appeals from a Workers' Compensation Commission opinion awarding appellee Michael Long permanent total disability benefits. On appeal, appellants argue that there were no objective findings to support a finding of a compensable injury and that Long failed to prove that he was permanently and totally disabled. We disagree and affirm.

When Long was employed as a Forrest City police officer on July 16, 2006, he responded to an altercation at the St. Francis County jail and was subsequently struck in the face with an industrial mop handle. Long suffered lacerations, which required stitches, and his left orbital bone was fractured. Temporary total disability and related medical expenses were paid for this admittedly compensable injury. A hearing was held before Chief Administrative Law Judge David Greenbaum on April 16, 2010, to determine Long's entitlement to permanent disability benefits.

Following his injury, Long was treated by Dr. Frank Schwartz. During that time he suffered numbness to the left side of his face, problems with sensitivity to light and peripheral vision, difficulty focusing,

and severe headaches almost to the point of nausea at times. Long also suffered a burning sensation along the suture area near his left eye. Dr. Schwartz attributed the headaches to a post-concussive syndrome. Narcotic pain relievers prescribed by Dr. Schwartz did not help, and Long was subsequently referred to a neurologist, Dr. Lance Wright.

Long first saw Dr. Wright on September 12, 2006. Dr. Wright diagnosed Long with "posttraumatic chronic daily headache disorder" and "traumatic left supraorbital neuropathy"—which was causing the burning and numbness in Long's forehead. Dr. Wright also noted that Long had subjective complaints of visual disturbance. From September 12, 2006, to June 11, 2007, Dr. Wright tried and failed to remedy Long's symptoms with seven different headache preventatives. After this time, Dr. Wright prescribed long-acting opiates. Long was eventually prescribed Avinza, which provided the greatest relief he had experienced since his injury. On November 19, 2007, Dr. Wright noted that the Avinza had helped Long's head pain modestly, although he still had a great deal of head pain most of the time. Dr. Wright noted that they were "about at the end of our rope in terms of things to try" and declared Long to be at maximum medical improvement. Long continued to followup with Dr. Wright approximately every three months and received prescription refills. At one visit, Long complained of balance and speech problems.

In a letter to Long's attorney dated December 11, 2007, Dr. Wright attempted to calculate a permanent partial impairment rating. Using the Fourth and Fifth Editions of the ₃AMA Guides to the Evaluation of Permanent Impairment, Dr. Wright had Long fill out a questionnaire rating his pain, its interference with his activities, and its effect on his mood. Dr. Wright calculated Long to be in the "mod-

erately severe impairment class" and noted that the guides did not assign strict percentages for chronic head pain as they do for other disorders. In a letter to the City of Forrest City and Long's attorney dated February 22, 2008, Dr. Wright described Long's condition, noting that Long "basically still has constant head pain which is aggravated by any sort of activity." "The pain is severe enough that it can be expected to be distracting to him and cause him to have a difficult time keeping his mind on whatever he happens to be doing." Dr. Wright opined that this should be regarded as a permanent problem. Regarding Long taking Avinza, Dr. Wright stated that "[a]lthough it does help his pain enough to make it worth taking, he still has pretty bad head pain most of the time especially if he tries to move about or be active." In a letter dated May 19, 2009, Dr. Wright noted that Long has a "very severe constant headache" that he did not expect to improve in the future, and he did not think Long was capable of being gainfully employed. In a letter dated May 7, 2009, Dr. Schwartz noted that Long had been "unable to return to his previous employment because of the headaches and it is unlikely that they will improve enough to where he can be employed again."

Long, who was fifty-four years old at the time of the hearing, testified that he was still taking the drug Avinza and that it had helped some but had not alleviated the problem. He testified that along with his headaches, he continued to have some loss of peripheral vision, extreme sensitivity to light that intensified his headaches, trouble identifying things, difficulty ₄concentrating, short-term memory loss, difficulty carrying on a conversation and making decisions, problems balancing and negotiating steps, and lightheadedness. Long testified that he never had these problems prior to his injury. He testified

that he could not function when his symptoms became really painful, and he would spend a lot of time lying down and resting. Long testified that during the hearing, his pain was a nine out of ten, and it was one of his better days. He testified that the pain stayed about the same all of the time. The laceration Long suffered had healed, but he had scars that ran through his eyebrow.

Long testified that he had previously asked Dr. Wright to release him to go back to work, which Dr. Wright did. The documentation of Long's December 12, 2006 office visit notes that Long told Dr. Wright that he wanted to try to go back to work and see if he can function with the pain. Dr. Wright gave him a letter approving him to go to full duty on a trial basis. Dr. Wright noted that he was not entirely convinced that Long would be able to do it. Long was not able to carry out his duties when he attempted to return to the police force for three days. He testified that he could not perform his duties, including filing reports the way he used to, because he could not remember things or keep his concentration. After delivering prisoners to the jail, Long backed his vehicle into another vehicle. He testified that he then knew he was probably a danger to others in his current condition. Long has not worked or applied for any employment since this brief return to work.

Long lives in Missouri with his wife, their nine-year-old granddaughter, and his father. Both his wife and his father are disabled and cannot drive. Long is able to drive and testified that he does so on a limited basis. He testified that his granddaughter takes the bus to school, but he sometimes drives her to school. Long does the grocery shopping for his household. The day before the hearing, Long drove from his home in Missouri to Forrest City, Arkansas, an estimated 305 miles. The trip took about thirteen hours, and Long drove the entire way. They stopped twice for gas, once to eat, and twice for restroom breaks and rest. Long testified that it was painful driving to the hearing, but he drives when he must.

Charles Kuczynski, Long's friend and former partner on the police force, testified that Long was not capable of going back to work as a police officer. He said Long was no longer capable of taking appropriate action when an incident transpired and intervening when necessary. Kuczynski had observed Long's coordination problems, balance problems, and short-term memory loss. He testified that a three- to five-minute conversation would take fifteen to twenty minutes with Long because of the need to refresh his memory. Kuczynski testified that Long's hesitation as a police officer could place himself or other officers in jeopardy. Kuczynski no longer felt comfortable working with Long.

Dwight Duch, the chief of police at the Forrest City Police Department, knew Long since he was hired in May 1996. When Long came back to work briefly in 2007, Duch was the interim police chief. Duch testified that Long was on heavy medication, but Duch did not know if Long was able to do his job because he was not out in the field with him nor did he observe him much during this time. Duch did, however, ask for a list of Long's medications to see if his medications would hamper his ability to be a police officer. Duch consulted with a doctor the city used, who said he would not recommend that Long be working the streets while on a particular medication on the list. Duch noticed that when Long came back to work his speech pattern had changed and he would halt his speech for extended moments. Duch also noticed that Long's eyes twitched and that he was unsteady on his feet.

The ALJ filed an opinion on June 10, 2010, finding Long permanently and totally disabled. The ALJ noted that Long was motivated to return to work, as evidenced by his request that Dr. Wright release him to return to work. The ALJ found that appellants offered no medical opinion whatsoever that Long was capable of working; thus, the medical opinion concerning Long's permanent disability was undisputed. The ALJ found Long to be "a most credible witness," and throughout Long's testimony, the ALJ observed "significant involuntary facial tremors." The ALJ noted that "[w]hile my observations are not medical findings, it was obvious to all observants in the courtroom that the claimant's facial tremors were involuntary." The ALJ also observed that Long "spoke with a slight stutter and frequently forgot the question previously asked, confirming his allegation of short-term memory loss." The ALJ noted that his personal observations were confirmed by observations recounted by Kuczynski and Duch, whose testimony was uncontroverted.

The Commission filed an opinion on December 14, 2010, affirming and adopting the decision of the ALJ. Appellants filed a notice of appeal on January 13, 2011.

■ In deciding whether substantial evidence supports the Commission's decision, this Court views the evidence and the inferences deducible therefrom in the light most favorable to the Commission's findings. *Wayne Smith Trucking, Inc. v. McWilliams,* 2011 Ark. App. 414, 384 S.W.3d 561. We affirm if reasonable minds could reach the Commission's conclusion, always remembering that weighing the evidence and making credibility determinations are within the Commission's province, not ours. *Id.* When the Commission, as it did here, affirms and adopts the ALJ's opinion, we consider both the ALJ's decision and the Commission's majority opinion. *Id.*

Permanent total disability means inability, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment. Ark.Code Ann. § 11–9–519(e) (Supp.2011). The burden of proof shall be on the employee to prove inability to earn any meaningful wage in the same or other employment. *Id.* Permanent total disability shall be determined in accordance with the facts. Ark.Code Ann. § 11–9–519(c).

■ Appellants first argue that there are no objective findings to support a finding of permanent anatomical impairment; thus, Long is not entitled to permanent partial disability. However, we need not address this argument because we affirm the award of permanent total disability. As opposed to a determination of permanent partial disability, there is no statutory requirement in making a permanent total disability determination that a claimant have an impairment rating established by the medical evidence. *Rutherford v. Mid–Delta Cmty. Servs., Inc.,* 102 Ark.App. 317, 285 S.W.3d 248 (2008).

Based on the testimony that Long drove the lengthy distance to attend the hearing, that he is the only person in his household who drives, and that he performs the grocery shopping for his household, appellants argue that Long can perform activities of daily living without substantial modification. They claim that a conclusion that he cannot earn any meaningful wages ignores the facts. Appellants, however, offered no proof to rebut the medical opinions that Long's condition prevented him from working. Furthermore, the ALJ found Long to be a credible witness who was motivated, yet not capable of working. The fact that Long testified that he drives

on a limited basis and that he drove some 305 miles over thirteen hours to attend the hearing is not sufficient to prove that he can earn meaningful wages. Substantial evidence supports the Commission's decision; thus, we affirm the finding that Long is permanently and totally disabled.

Affirmed.

GLADWIN and ROBBINS, JJ., agree.