SLIP OPINION

Cite as 2017 Ark. App. 143

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-16-565

MULTI-CRAFT CONTRACTORS,
INC. AND GALLAGHER BASSETT
SERVICES, INC.

APPELLANTS

V.

RICK YOUSEY

APPELLEE

**Opinion Delivered** March 8, 2017

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION
[NO. G201671]

REVERSED IN PART AND
AFFIRMED AS MODIFIED IN PART
ON DIRECT APPEAL; AFFIRMED IN
PART AND AFFIRMED AS
MODIFIED IN PART ON CROSS-
APPEAL

## N. MARK KLAPPENBACH, Judge

Appellee Rick Yousey was seriously injured in an accident while unloading equipment for his employer, appellant Multi-Craft Contractors, Inc. Yousey's injuries were accepted and medical treatment was provided, but Multi-Craft later controverted his claims for permanent disability benefits for his brain, loss of vision, and facial-nerve injury. The Workers' Compensation Commission (Commission) awarded Yousey benefits for impairments of his brain and left eye but found that he was not entitled to benefits for a nerve injury. On appeal, appellants contend that the impairment ratings for his brain and left eye are not supported by substantial evidence and that the Commission erred as a matter of law. Yousey has filed a cross-appeal challenging the Commission's findings regarding his left eye and facial-nerve injury.

As a result of his February 24, 2012 accident, Yousey suffered numerous facial fractures, including fractures of the cheekbones, nose, sinuses, jaw, and orbital bones, as well as a broken foot, broken hand, and torn rotator cuff. His neurologist, Dr. Michael Morse, testified that Yousey had the worst skull fracture he had ever seen and that he was lucky to be alive. Yousey had surgeries on his face and to realign his left eye, which had been pushed back into his head. He testified that he suffered from double vision and blurred vision since the accident, and as a result, he could no longer obtain a commercial driver's license. Yousey said that he takes prescription medication for headaches, which he suffers from every day, and resorts to getting painful shots in his head to treat the headaches when they become unbearable. Other symptoms he suffers from include loss of short-term memory, numbness and coldness in his left cheek, loss of his senses of taste and smell, slower speech, emotional lability, and depression.

Dr. Morse testified that Yousey's symptoms are consistent with a frontal-lobe brain injury. Dr. Morse referred Yousey to Richard Back, Ph.D., a clinical psychologist, for a neuropsychological evaluation. Dr. Back tested Yousey and found markedly impaired memory functioning and left-hand impairment in terms of fine and gross motor tasks. Yousey had improved somewhat when Dr. Back tested him again two years later. Dr. Back opined that Yousey's test results and all of his symptoms are consistent with the traumatic head injury he had sustained and assessed a permanent-impairment rating of twenty-nine percent to the body as a whole.

SLIP OPINION

"Permanent impairment" has been defined as any permanent functional or anatomical loss remaining after the healing period has ended. *Wayne Smith Trucking, Inc. v. McWilliams*, 2011 Ark. App. 414, 384 S.W.3d 561. Any determination of the existence or extent of physical impairment shall be supported by objective and measurable physical or mental findings. Ark. Code Ann. § 11-9-704(c)(1)(B) (Repl. 2012). "Objective findings" are those findings which cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). Medical opinions addressing compensability and permanent impairment must be stated within a reasonable degree of medical certainty. Ark. Code Ann. § 11-9-102(16)(B). However, there is no requirement that medical testimony be based solely or expressly on objective findings; the statute requires only that the medical evidence of the injury and impairment be supported by objective findings. *Wayne Smith Trucking*, *supra*.

An injured employee is entitled to compensation for the permanent functional or anatomical loss of use of the body as a whole whether his or her earning capacity is diminished or not. *Id.* The Commission is authorized to determine what portion of the medical evidence to credit and to translate that evidence into a finding of permanent impairment using the AMA *Guides to the Evaluation of Permanent Impairment*; the Commission may assess its own impairment rating rather than rely solely upon determination of the validity of ratings assigned by physicians. *Id.*

In reviewing decisions from the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and

SLIP OPINION

affirm if that decision is supported by substantial evidence. *Rippe v. Delbert Hooten Logging*, 100 Ark. App. 227, 266 S.W.3d 217 (2007). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. Questions concerning the credibility of witnesses and the weight to be given their testimony are within the exclusive province of the Commission. *Id*.

The Commission found that Yousey was entitled to a permanent-anatomical-impairment rating of twenty-nine percent to the body as a whole for a brain injury. The Commission listed three objective findings to support its decision: (1) the extreme damage to Yousey's face and skull evidencing the traumatic forces applied to his brain; (2) the presence of pneumocephalus; and (3) the presence of evidence of a shear injury on an MRI. Appellants argue that none of these constitute objective findings to support an impairment due to a brain injury.

The Commission first concluded that the severity of the damage to Yousey's head was objective evidence of the great force applied to his head, skull, and brain. The Commission noted Dr. Back's testimony that the force it took to break the multitude of bones in Yousey's face was consistent with the type of force that would cause a brain injury. We agree with appellants that the force of the accident and resulting broken bones are not objective medical findings to support a brain injury. Although great force was inflicted in the accident, there was no evidence that the numerous fractures Yousey suffered indicated that he necessarily injured his brain as well.

SLIP OPINION

The Commission next found that Yousey's CT scan showed pneumocephalus, which it said was "objective evidence of skull fracture, and a skull fracture must involve trauma to the brain." We agree with appellants that the Commission used conjecture to find that a skull fracture "must involve" trauma to the brain. Dr. Morse testified that pneumocephalus was air inside the skull as a result of the skull fracture. When asked what this meant regarding a brain injury, Dr. Morse said that "it means his skull fracture was pretty bad is all that means." There was no evidence that the presence of pneumocephalus was an objective finding of a brain injury.

Lastly, the Commission relied on evidence of a shear injury on an MRI. Dr. Morse testified that Yousey's MRI showed something in his left internal capsule, but he could not tell from the MRI if it was a cyst that he had been born with, a shear injury due to the head injury, or an old, small infarct from a prior stroke. Dr. Morse was asked if he could say it was more likely to be shearing when considering all of the evidence indicating that Yousey had sustained a brain injury, but Dr. Morse said he could not say that. The Commission found that it was more likely to be a shear injury because there was no other evidence that Yousey had ever suffered a stroke, and the accident was consistent with a shear injury. Appellants argue that the Commission used conjecture and speculation in reaching this conclusion. We agree. The evidence established only that Yousey's MRI showed a potential shear injury. Dr. Morse could not opine that it was more likely to be a shear injury than the other two possibilities. We hold that this does not constitute an objective finding of a brain injury.

Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *Serrano v. Westrim, Inc.*, 2011 Ark. App. 771, 387 S.W.3d 292. Conjecture and speculation, even if plausible, cannot take the place of proof. *Id.*

Our court has established that neuropsychological testing, without more, is not adequate to establish an organic brain injury by "objective findings." *Parson v. Ark. Methodist Hosp.*, 103 Ark. App. 178, 287 S.W.3d 645 (2008); *Rippe*, 100 Ark. App. 227, 266 S.W.3d 217. Although Yousey's fractures and pneumocephalus were objective findings, they supported an injury only to his skull or his head, not his brain. *See Parson*, *supra* (holding that the objective findings of a facial hematoma and contusions supported an injury only to appellant's head, not her brain). Dr. Morse testified that based on the technology that was available, there were no objective findings of an injury to Yousey's brain. We hold that the evidence cited by the Commission does not satisfy the statute's requirement for objective findings to support a brain injury. Therefore, we reverse the Commission's decision awarding Yousey permanent-impairment benefits for his brain.

The Commission found that Yousey was entitled to a permanent-impairment rating of twenty-four percent to the body as a whole for his loss of vision. The Commission adopted the reasoning and assessment of Dr. Andrew Lawton, an ophthalmologist with a speciality in neuro-ophthalmology. As a result of the many fractures in Yousey's face, including a left-orbital-blowout fracture, Yousey's left eye was downwardly displaced and

sunken in. Despite surgery, his eyes remained misaligned, and he suffered from double vision. Dr. Lawton testified that the AMA guides provided three components for the measurement of visual impairment, and the third component encompassed double vision. If a person has double vision within the central ten to twenty degrees of vision, Dr. Lawton said that it is interpreted by the AMA rules as a total loss of vision in that eye. A person would have to cover that eye in order to function. Dr. Lawton said that Yousey has double vision even less than ten degrees away from center of vision. According to Dr. Lawton, Yousey is entitled to a rating for total loss of vision in one eye, which is a twenty-five percent impairment of the entire visual system and translates to a twenty-four percent impairment of the whole person. The Commission agreed.

Appellants argue that this finding is not supported by substantial evidence because Yousey's visual acuity and peripheral vision were not affected by his injury; he can still see out of his left eye. Alternatively, appellants argue that Yousey should not be awarded benefits to the body as a whole because his injury is a scheduled injury. Under the scheduled-injury statute, appellants argue that Yousey did not suffer total loss of vision. On cross-appeal, Yousey agrees that his eye injury is a scheduled injury and asserts that he is entitled to a rating for 100 percent loss of use of his left eye.

The test of whether an injury falls within the scheduled-injury category is primarily a question of law. *Fed. Compress & Warehouse Co. v. Risper*, 55 Ark. App. 300, 935 S.W.2d 279 (1996). An eye injury and the resulting impairment, including double vision, fall under

the scheduled permanent-injury category as set forth in Arkansas Code Annotated section 11-9-521. *See id.* This statute provides that an enucleated eye, in which there was useful vision, is a scheduled injury for which an employee shall receive weekly benefits in the amount of the permanent partial-disability rate attributable to the injury for 105 weeks. Ark. Code Ann. § 11-9-521(a)(14). Compensation for the permanent loss of eighty percent or more of the vision of an eye shall be the same as for the loss of an eye. Ark. Code Ann. § 11-9-521(c)(1).

We agree with the parties that Yousey's injury is a scheduled injury. Dr. Lawton's testimony provided substantial evidence to support the Commission's finding that Yousey was entitled to a rating for 100 percent loss of vision in his left eye; however, because an eye injury is a scheduled injury, the Commission erred in converting the rating to an impairment to the body as a whole. A claimant who sustains a scheduled injury is limited to the applicable allowances set forth in Arkansas Code Annotated section 11-9-521. *Fed. Compress & Warehouse Co.*, *supra*. We therefore affirm the Commission's finding of 100 percent impairment to Yousey's left eye but modify the award to reflect that it is a scheduled injury and is not converted to an impairment to the body as a whole.

On cross-appeal, Yousey argues that there is no substantial evidence to support the Commission's refusal to award a rating for his trigeminal nerve injury. The Commission found that Yousey was not entitled to a rating for this injury because the rating assessed by Dr. Morse was based on Yousey's level of pain. When determining physical or anatomical

impairment, neither a physician, any other medical provider, an administrative law judge, the Workers' Compensation Commission, nor the courts may consider complaints of pain. Ark. Code Ann. § 11-9-102(16)(A)(ii)(a). In Dr. Morse's deposition, Yousey's counsel asked him if Yousey would be entitled to a rating for a trigeminal nerve injury based on Table 9 of page 145 of the AMA guides. Yousey's counsel noted that the table rated mild, moderate, and severe neuralgic pain, and Dr. Morse assigned a moderate rating based on the level of pain Yousey reported from his headaches.

Yousey relies on this court's opinion in *Wayne Smith Trucking, Inc.*, 2011 Ark. App. 414, 384 S.W.3d 561, for the proposition that damage to the trigeminal nerve is an accepted finding to support an impairment rating. The impairment rating affirmed in that case, however, was not based solely on complaints of pain. Here, when asked to assess a rating, Dr. Morse clearly considered only Yousey's level of pain caused by his headaches. Substantial evidence supports the Commission's denial of permanent-impairment benefits for Yousey's nerve injury, and we affirm.

Reversed in part and affirmed as modified in part on direct appeal; affirmed in part and affirmed as modified in part on cross-appeal.

GRUBER, C.J., and GLOVER, J., agree.

*Bassett Law Firm LLP*, by: *Curtis L. Nebben*, for appellants.

*Cullen & Co., PLLC*, by: *Tim Cullen*; and *Jason M. Hatfield, P.A.*, by: *Jason M. Hatfield*, for appellee.