# ARKANSAS COURT OF APPEALS
## DIVISION I
### No. CV–17–38

HAROLD L. FOXX

APPELLANT

V.

BILL'S SUPERFOODS, INC.

APPELLEE

**OPINION DELIVERED:** OCTOBER 25, 2017

APPEAL FROM THE ARKANSAS
WORKERS' COMPENSATION
COMMISSION
[NO. G408922]

AFFIRMED

## ROBERT J. GLADWIN, Judge

The Arkansas Workers' Compensation Commission (Commission) denied Harold L. Foxx's claim for neck and back injuries. On appeal, Foxx argues that the Commission erred by failing to admit additional evidence and by determining that the claim was not compensable. We affirm.

Foxx worked part time for appellee Bill's Superfoods, Inc. (Bill's), when he sustained a compensable injury to his right leg and groin on May 23, 2013. When Foxx later made claims for neck and back injuries from the same accident, Bill's controverted the claims. At the hearing before the administrative law judge (ALJ), Foxx testified that he is sixty-two years old and that until 2007 he was a truck driver, but he "blew-out" his back and had been on disability for that since 2009. He said that he had three lower-back surgeries before 2013, and he began working at Bill's in 2011, stocking freezers and lifting no more than fifty to sixty pounds. He said that he had no difficulties performing his duties before May 23, 2013. On that date, he fell while pulling an ice tub out of the freezer. He said that he

reported the injury to his supervisors, and he wrote in the report that he had hurt his "right leg and groin."

He said that before May 23, 2013, he never had problems with his neck and had never had an MRI or a CT scan of it. He said that he had a partial rotator-cuff tear from a slip and fall from his truck that had occurred before the May 23 incident, and he thought the tear was the reason his neck was hurting after the incident. He said that his neck began to tighten a couple of months after the May 23, 2013 accident, but he later admitted that he had said in his deposition that his neck began to hurt a couple of weeks after the accident. He said that he never went back and told his supervisors that he had hurt his neck or back on May 23, 2013. He also said that before the May 2013 accident, he had played tennis.

Foxx continued to work without restrictions following the May 23, 2013 fall. He said that his physical condition deteriorated until he quit working in October 2014, and he underwent a cervical MRI. He told Dr. Abraham, whom he saw on October 6, 2014, that he had "left shoulder problems that progressed into [his] neck over the last six months." Dr. Abraham suggested a cervical discectomy and fusion in Foxx's cervical area, but no surgery has been performed.

Foxx described his previous injuries that included a lower-back injury in a 1979 traffic accident, which was work related; a workers'-compensation claim for carpal tunnel syndrome in his arms and wrists that was denied in the 1980s; and a 2004 work accident that hurt his back and resulted in three back surgeries. Foxx said that he began receiving disability benefits for his back injury in 2009, and he now receives $1200 a month. He

SLIP OPINION

settled his claim from the accident that involved the back surgeries for $97,000. He said that his back was fine between 2009 and 2013.

Foxx said that in July 2014, he and his wife were involved in an accident when an ice cream truck "t-boned" their vehicle. Foxx said that his medical bills from that accident were paid for and he also received $9000. He also admitted that he had seen Dr. Brenza on March 11, 2013, complaining of lower-back pain and right-hip pain to his groin. He had indicated to the doctor that he was an active tennis player.

Walter Glenn Orr testified that he co-owns Bill's and supervises all locations. He said that Foxx had signed a form indicating that he had hurt his groin and leg. Foxx never came back and told him about his neck or back being hurt. Foxx worked until October 2014, and the first Orr knew about Foxx's claiming a neck injury was when Foxx filed with the Commission in November 2014.

By an opinion filed February 19, 2016, the ALJ found that Foxx failed to prove by a preponderance of the evidence that he sustained either a low-back injury or cervical injury as a result of the May 23, 2013 work incident. Further, Foxx failed to prove by the same standard that his need for treatment associated with his low back and neck were causally related to the work incident on May 23, 2013. The ALJ acknowledged that Dr. Abraham had noted objective findings of a cervical injury, as well as objective postoperative changes in Foxx's lumbar spine which "could have been aggravated" by the May 23, 2013 accident. The ALJ found that this opinion was entirely based on Foxx's history of an event that had occurred a year and a half earlier. Further, Foxx conceded that he only complained of his groin and right leg when he filled out the incident report.

Foxx appealed to the Commission on March 10, 2016. However, before the Commission's decision was issued, Foxx filed with the Commission a petition to consider additional evidence that he had seen a specialist on June 20, 2016, and obtained a medical report that was not available to him before the hearing. On August 19, 2016, the Commission denied Foxx's request to introduce the follow-up medical report.

On November 22, 2016, the Commission affirmed the ALJ's finding that Foxx failed to prove that he sustained a compensable neck or back injury. The Commission stated,

> The evidence before the Commission does not demonstrate that the claimant injured his neck or back when he slipped and fell on May 23, 2013. Dr. Brenza examined the claimant's back on May 29, 2013 and noted "ttp," viz., "tenderness to palpation" over the claimant's lumbar spine. "Tenderness" is not an objective medical finding establishing an injury. *See Rodriguez v. M. McDaniel Co., Inc.*, 98 Ark. App. 138, 252 S.W.3d 146 (2007). The claimant continued to follow up with Dr. Brenza for low back pain, which pain the claimant admitted had been present since 1979.

> An MRI of the claimant's cervical spine in August 2014 showed "Severe multilevel degenerative disc disease." The record does not show that the degeneration reported in the claimant's cervical spine was causally related to the May 2013 injury to the claimant's right leg and groin. The claimant signed a Form AR–C, Claim for Compensation, in November 2014 and reported that he had injured his neck and back on May 23, 2013. In workers' compensation cases, the Commission functions as the trier of fact. *Blevins v. Safeway Stores*, 25 Ark. App. 297, 757 S.W.2d 569 (1988). The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Commission. *Murphy v. Forsgren, Inc.*, 99 Ark. App. 223, 258 S.W.3d 794 (2007). In the present matter, the record does not corroborate the claimant's assertion that he injured his neck and back on May 23, 2013. The Full Commission finds that the claimant was not a credible witness.

> Dr. Abraham reported in December 2014 that a lumbar MRI showed bulging and post-operative changes. Nevertheless, the Full Commission notes that similar abnormalities were reported in a December 2011 MRI, before the accidental injury occurring May 23, 2013. Dr. Abraham filled out a questionnaire and opined that the claimant had injured his cervical spine and lumbar spine on May 23, 2013. It is within the Commission's province to weigh all of the medical evidence and to determine what is most credible. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d

151 (1999). The record does not corroborate Dr. Abraham's opinion in the present matter, stated in December 2014, that the claimant injured his cervical and lumbar spine on May 23, 2013. Dr. Abraham's opinion regarding causation is not supported by the evidence and is entitled to minimal evidentiary weight. Nor does the record show that the abnormalities reported on the August 19, 2015 cervical and lumbar MRI were causally related to the May 23, 2013 compensable injury to the claimant's right leg and groin.

Foxx filed a timely notice of appeal, and this appeal followed.

## I. *Additional Evidence*

Arkansas Code Annotated section 11-9-705(c)(1)(B) (Repl. 2012) provides that each party shall present all evidence at the initial hearing. And *Haygood v. Belcher*, 5 Ark. App. 127, 133, 633 S.W.2d 391, 394 (1982), sets forth the prerequisites for allowing submission of newly discovered evidence: (1) Is the evidence relevant? (2) Is it cumulative? (3) Would it change the result? (4) Was the movant diligent? The Commission has broad discretion with reference to the admission of evidence, and its decision will not be reversed absent a showing of abuse of discretion. *Coleman v. Pro Transp., Inc.*, 97 Ark. App. 338, 249 S.W.3d 149 (2007).

Foxx argues that the Commission erred by failing to admit additional evidence. He contends that after the appeal, but before the date the Commission's opinion was issued, he was able to secure an MRI and a CT scan of his right hip. He contends that the medical records generated six days after the injury show a right-hip injury with a history of a fall on ice in a freezer on May 23, 2013. He argues that "it is historically certain that lower back issues commonly involve hip and leg symptoms."

Foxx contends that he continued to experience symptoms in both his lower back and right hip and in December 2014 he was "finally allowed to be evaluated with an MRI

of his lower back." The report recognized Foxx's preexisting lower-back surgery, but "revealed that post-operative changes were present." He argues that, despite his complaints of pain in the right hip and groin dating back to the time of the initial injury, the need for cervical surgery overshadowed the need for treatment to other body parts, so no further evaluation was immediately performed on his right hip. It was not until June 20, 2016, that he was first able to obtain a thorough evaluation of his right-hip condition through diagnostic testing. He argues that the Commission has discretion under the statute to consider additional evidence, even though medical evidence should be submitted no less than seven days before the hearing. *See* Ark. Code Ann. § 11-9-705(c)(3).

Foxx argues that Bill's claimed that the new report was not relevant because it involved Foxx's right hip rather than his neck or lower back. Foxx contends that many lower-back claims involve foot, leg, and hip symptoms and may even find their genesis as a complaint of leg pain. Foxx contends, "Therefore, what the appellant and some of his physicians apparently believed was some form of a lower-back problem was later identified as an objective hip problem." He argues that because this information "did not become apparent" until it was too late, he has no remedy. He maintains that the purpose of the workers'-compensation statutes is to pay reasonable and necessary medical expenses, Ark. Code Ann. § 11-9-101, and that it would be appropriate "to avoid requiring the appellant to accurately self-diagnose his condition and distinguish between a lower back or hip condition." He asks that the additional medical report be admitted; alternatively, he asks that the case be remanded for consideration of a claim for additional benefits for the admitted right-hip injury.

Bill's contends that Foxx has submitted no valid reason why the materials should be allowed into the record. Bill's agrees that the evidence is not cumulative but claims that the other three requirements under *Haygood*, *supra*, have not been met. First, they are irrelevant because the issues litigated were compensability of alleged back and neck issues. The proffered medical record shows that Dr. Swymn is recommending a right-hip replacement, and Bill's contends that treatment for the right hip was never at issue. Bill's also argues that the result of the Commission's decision would not change based on the proffered evidence because there was no finding regarding hip compensability or treatment. Finally, Bill's claims that Foxx was not diligent in the generation of the report.

Bill's cites cases holding that the absence of evidence establishing that the moving party was diligent is enough to reject requests for introduction of additional evidence. *See St. Joseph's Mercy Med. Ctr. v. Redmond*, 2012 Ark. App. 7, 388 S.W.3d 45; *Wayne Smith Trucking v. McWilliams*, 2011 Ark. App. 414, 384 S.W.3d 561. We are persuaded that the Commission did not abuse its discretion in denying Foxx's motion because Foxx did not obtain the examination and resulting report until several months after the ALJ had denied his claims.

## II. *Compensability*

The standard of review in workers'-compensation cases is well settled. On appeal, this court views the evidence in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Schall v. Univ. of Ark. for Med. Scis.*, 2017 Ark. App. 50, at 2, 510 S.W.3d 302, 303. Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* The issue is not whether the appellate

court might have reached a different result from the Commission, but whether reasonable minds could reach the result found by the Commission; if so, the appellate court must affirm. *Id.* Credibility questions and the weight to be given to witness testimony are within the Commission's exclusive province. *Id.* The Commission's decision to accept or reject medical opinions and how it resolves conflicting medical evidence has the force and effect of a jury verdict. *Id.*

Foxx argues that the Commission erred by failing to determine that he sustained compensable neck and back injuries. Foxx contends that the Commission totally discounted Dr. Robert Abraham's opinion that Foxx's cervical and lumbar injuries were objective and were the result of his May 23, 2013 accident. The Commission stated that these opinions were not supported by the evidence and were entitled to minimal evidentiary weight. Foxx contends that "there is no sufficient explanation for this conclusion." He argues that "many cervical problems begin with similar complaints of pain in the shoulder area." The MRI report of August 2, 2014, contains a history of a fall one year prior with neck and shoulder pain. It also shows objective problems at two different levels of the cervical spine. The medical notes indicate that Foxx presented with neck pain "caused by a fall that occurred in May 2013." On December 15, 2014, Dr. Abraham indicated that the objective cervical problems (herniation at three cervical levels, as well as spinal-cord impingement) resulted from the May 23, 2013 work accident.

Foxx argues that the evidence is that he reported symptoms related to his back almost immediately after the accident. On May 29, 2013, the medical notes show that he complained of pain in his lower back, hip, and knee. He argues that each of these symptoms

can be evidence of a lower-back injury. He also argues that he was not having difficulties performing his work duties before the May 23, 2013 accident and that no credible evidence suggests that. Dr. Abraham stated that there were postoperative changes and other objective problems after an MRI of the lumbar spine. On December 15, 2014, Dr. Abraham opined that the May 23, 2013 accident resulted in a lumbar injury with positive objective findings. Foxx points to the August 26, 2015 medical notes of Dr. Abraham that show severe lower-back pain with radiation into the lower-right extremity and groin, and a constant burning sensation. The corresponding MRI revealed a recurrent disc herniation with severe effacement of the right lateral recess.

Foxx argues that even if he had some preexisting lumbar issues, he could not have worked as a stocker carrying heavy frozen food with the injuries reflected in the record. He argues that the medical notes from doctor visits before May 23, 2013, show no evidence of pain radiation or other neurologic-type symptoms. He claims that the notes following the May 23, 2013 accident reveal a lower-back condition that becomes progressively worse with burning and radiating pain. Foxx contends that he was recommended for physical therapy and that the medical note of August 5, 2013, shows a progression of the lumbar radiation into his hamstring. He argues that the progression was shown to be objective by MRIs showing postoperative changes and herniations. He argues that there is no proof that the lumbar problems he had before the May 23, 2013 accident included any "significant post-operative changes." Dr. Abraham opined that the postoperative changes were caused by the May 2013 accident, and Foxx argues that this opinion is consistent with the record.

Thus, he claims that the Commission arbitrarily disregarded Dr. Abraham's opinion. *See Cooper v. Hiland Dairy*, 69 Ark. App. 200, 11 S.W.3d 5 (2000).

Foxx argues that even though he had some prior lumbar issues, they did not prevent him from performing his job duties. After the injury, his condition became significantly worse so that his treatment was altered to include physical therapy; pain radiating into his lower leg, and postoperative changes in his lumbar spine were diagnosed. He asserts that these factors would lead a fair-minded person to conclude that the May 2013 work accident caused additional lumbar problems or aggravated the preexisting lumbar problems so that an objective spinal injury was present.

Bill's contends that substantial evidence supports the Commission's decision that Foxx failed to prove that he sustained a compensable neck or back injury. We agree. In Arkansas workers'-compensation law, a compensable injury includes accidental injuries that cause physical harm requiring medical services when they occur in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(i). Compensable injuries must be established by objective findings, Ark. Code Ann. § 11-9-102(4)(D), and "objective findings" are those findings that cannot come under the voluntary control of the patient. Ark. Code Ann. § 11-9-102(16)(A)(i). Furthermore, complaints of pain and muscle tenderness are not considered objective findings under the statute. *Pafford Med. Billing Servs., Inc. v. Smith*, 2011 Ark. App. 180, at 7–8, 381 S.W.3d 921, 926.

Foxx testified that he had prior workers'-compensation claims and that he knew to report an injury. Wally Orr testified that Foxx reported that he had hurt his groin and leg, that he did not report an injury to his neck or back, and that Orr knew nothing about the

SLIP OPINION

claimed injuries until November 2014 when Foxx filed a Form C with the Commission. Orr testified that Foxx worked at Bill's until October 2014, and Orr had regular interaction with Foxx. He said that Foxx's job performance never changed and that no modifications were made to his job. Foxx admitted that he did not disclose the alleged back and neck injuries on his claim for benefits. There was also a discrepancy in Foxx's deposition testimony and hearing testimony regarding the onset of his neck pain. Foxx is on Social Security disability because of his back issues. Foxx received continuous treatment for his lower back before the May 23, 2013 incident. Foxx did not have any treatment for cervical issues until an MRI was done on August 2, 2014. He told Dr. Abraham that his neck problems started over the past six months when he was examined on October 6, 2014, which does not comport with an injury in May 2013. Foxx never reported neck injuries to his employer even though he continued to work until October 2014.

Accordingly, substantial evidence supports the Commission's decision.

Affirmed.

HARRISON and KLAPPENBACH, JJ., agree.

*Orr Willhite, PLC*, by: *M. Scott Willhite*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellees.